· **Shirley A. NEWMAN and Anthony C. Butler, Plaintiffs,**

v.

**SAN JOAQUIN DELTA COMMUNITY COLLEGE DISTRICT, a public entity; Danielle Ruley, James Wood, Defendants.**

**No. 2:09–cv–03441 WBS KJN.**

United States District Court, E.D. California.

Feb. 15, 2011.

Kenneth N. Meleyco, Law Offices of Kenneth N. Meleyco, Stockton, CA, Stephen M. Ryals, PHV, Ryals and Breed PC, Saint Louis, MO, for Plaintiffs.

J. Anthony Abbott, Mayall Hurley Knutsen Smith & Green, Michael James Matteucci, Law Office of Michael J. Matteucci, Stockton, CA, James B. Carr, Mastagni Holstedt Amick Miller & Johnsen, Sacramento, CA, for Defendants.

## ORDER

KENDALL J. NEWMAN, United States Magistrate Judge.

At the request of Defendant San Joaquin Delta Community College District ("District"), plaintiff Shirley A. Newman ("Newman") stipulated to attend and undergo an independent mental examination pursuant to Federal Rule of Civil Procedure 35. (Joint Statement ("JS") Dkt. No. 71 at 6.)[1] Although she agreed to undergo a mental exam, Newman sought to impose various limitations upon it and challenged the qualifications of the District's proposed examiner. (*Id.*) Presently before the court is the District's motion to compel Newman's mental examination on the terms and conditions the District requests. (Dkt. No. 53.)[2]

The court heard this matter on its law and motion calendar on February 3, 2011. Attorney J. Anthony Abbott appeared on behalf of the District. Attorney Kenneth N. Meleyco appeared on behalf of Newman.

At the hearing, the court heard arguments from counsel on the issues of: (1) whether the District's proposed examiner is qualified to administer the examination; (2) whether the exam should have a time limit of less than the requested 11 a.m. to 5 p.m. sessions for two days; (3) whether the court should prohibit certain tests from being administered during the mental exam; (4) whether a "support person" should be present in the examination room for any portion of the mental exam; (5) whether the clinical examination portion of the mental exam and/or the testing portion of the mental exam should be videotaped; (6) and in the absence of an order permitting videotaping, whether the clinical examination portion of the mental exam should be audiotaped.

For the reasons described during the hearing and within this order, the court grants the District's motion, but permits audiotaping of the clinical examination portion of Newman's mental exam.

## I. BACKGROUND

The operative Third Amended Complaint alleges that plaintiffs are husband and wife and were students enrolled in and attending classes at Delta College in March 2008.[3] (Third Am. Compl. ¶¶ 10–11, 13, Dkt. No. 40.) Newman allegedly "suffers from post-traumatic stress disorder and spinal damage and disease" and, as a result, always wears on her wrist a "medic-alert bracelet," which states, in part: "Diabetic, epileptic, Gabapentin, high blood pressure, psychotic disorder...." (*Id.* ¶ 10.) The medic-alert bracelet also allegedly lists Anthony Butler, a plaintiff in this action, as an emergency contact and contains contact information for Butler. (*Id.* ¶ 10.) Plaintiffs allege that as a result Newman's disabilities, Newman suffers from "severe and extreme anxiety" from time to time. (*Id.* ¶ 13.) They also allege that Delta College was aware of Newman's disabilities. (*Id.*)

On March 13, 2008, plaintiffs were allegedly attending classes in separate classrooms at Delta College. (Third Am. Compl. ¶ 11–12.) Plaintiffs allege that at approximately 11:30 a.m., Newman began suffering from "severe and extreme anxiety" and exited her classroom and went to the classroom where Butler, her husband, was attending class. (*Id.* ¶ 13.) This was allegedly Newman's "usual

---

**1.** The parties' joint statement is on the court's docket at entry number 71, and the related declarations are on the court's docket at entries numbered 72 through 75.

**2.** This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(1) and 28 U.S.C. § 636(b)(1), and was reassigned by an order entered February 11, 2010 (Dkt. No. 31).

**3.** The District filed an answer to the Third Amended Complaint. (Dkt. No. 49.)

course of conduct when struck by anxiety" and, when Newman reached her husband's classroom, the instructor allegedly escorted Newman and Butler to a private room. (*Id.*) Once in the private room, Newman allegedly "knocked some items off a desk and said she was looking for something to hurt somebody." (*Id.*) A woman who was in the room at the time allegedly called the police and reported that Newman was ill. (*Id.*) Plaintiffs allege that two officers, Delta College Police Officers Ruley and Wood, were dispatched to the scene. (*Id.* ¶ 14.)

Plaintiffs allege that although they were "peacefully leaving" the classroom when the Officers Ruley and Wood arrived, the officers attacked plaintiffs. (*See* Third Am. Compl. ¶ 15.) Briefly stated, plaintiffs allege that Officers Ruley and Wood attacked Butler without provocation and used unnecessary and unreasonable force in detaining and restraining Butler. (*See id.*) They also allege that Officer Ruley threw Newman "against a stout wall with great and unreasonable force." (*Id.*) Plaintiffs allege that they were then "falsely imprisoned and detained." (*Id.*)

Plaintiffs allege that they were temporarily suspended from Delta College for an alleged assault on a Delta College police officer. (*See* Third Am. Compl. ¶ 21(I).) As to Newman, continued enrollment at Delta College was allegedly contingent on submitting a recent evaluation by a "licensed (MD) psychiatrist regarding her treatment plan." (*Id.* ¶ 21(m).) Newman was allegedly denied enrollment because she submitted only a letter from a therapist. (*Id.* 21(n).) Plaintiffs allege, however, that Newman's record was ultimately cleared. (*Id.* ¶¶ 21(o)-(p).)

Plaintiffs allege that they "were hurt in their health, strength and activity" and sustained "shock and injury to their nervous system and person, all of which said injuries have caused, and continue to cause said Plaintiffs great mental, physical, and nervous

pain and suffering." (Third Am. Compl. ¶ 16*.)[4] Plaintiffs further allege that their injuries "will result in some permanent disability." (*Id.*) Additionally, they allege a loss of consortium as to Newman in that Newman's "physical and emotional injuries" have left her "unable to perform the necessary duties as a wife and the work and services usually performed in the care, maintenance and management of the family home." (*Id.* ¶ 19*.)

Plaintiffs' Third Amended Complaint alleges numerous claims against defendants. Particularly relevant here, plaintiffs allege claims for intentional infliction of emotional distress and negligent infliction of emotional distress against all defendants. (*See* Third Am. Compl. ¶¶ 28–35.) Additionally, plaintiffs allege that the District violated the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq., as to her and that, as a proximate result of such violation, she "[e]xperienced and continues to experience guilt, hardship, anxiety, indignity, and severe mental and emotional anguish." (*See* Third Am. Compl. ¶ 55(b).)

On November 23, 2010, counsel for the District requested, via e-mail, that Newman voluntarily submit to a neuropsychological examination, to be conducted by Richard J. Perrillo, Ph.D., in San Francisco, California, and provided Newman with a proposed stipulation and order regarding that examination. (Abbott Decl. ¶¶ 5–6 & Ex. 3; Prop'd Order, Dkt. No. 53–3, Exh. 3 at 2–3.) In a letter dated November 23, 2010, Newman's counsel explained that Newman would not submit to the neuropsychological examination because Newman was not claiming any "brain damage."[5] (Abbott Decl. ¶ 7 & Ex. 4.)

In response, the District's counsel sent a letter, dated November 24, 2010, to Newman's counsel explaining why the District believed good cause existed to support the

---

4. The Third Amended Complaint contains errors insofar as the sequential numbering of paragraphs is concerned. It contains allegations in paragraphs 1 through paragraph 21(r), but thereafter reflects allegations contained in paragraphs 16 through 69. To the extent cited herein, the second set of paragraphs numbered 16 through 21 will be denoted with an asterisk.

5. Among other things, Newman's counsel's letter states: "Over the years, a number of different health care providers have diagnosed Shirley Newman with numerous disorders from a dissociative identity disorder, panic attack disorder, mood disorder, post traumatic stress syndrome, depression, and schizophrenia." (Abbott Decl., Ex. 4.)

neuropsychological examination. (Abbott Decl. ¶ 8 & Ex. 5.) In a letter dated December 1, 2010, Newman's counsel conveyed that Newman would not voluntarily submit to the requested examination, arguing that good cause for the examination did not exist because Newman was not claiming brain damage and that the subpoenaed medical records would be adequate substitutes for the examination. (Abbott Decl. ¶ 9 & Ex. 6.)

On December 8, 2010, counsel for the District and Newman met and conferred about the proposed examination and other discovery matters via telephone and, after approximately 30 minutes of discussion, Newman's counsel conveyed that Newman would not agree to the independent neuropsychological examination under any circumstances. (Abbott Decl. ¶ 10.) Also on December 8, 2010, Newman's counsel sent a letter to the District's counsel explaining that Newman would not agree to the neuropsychological examination. (Abbott Decl. ¶ 11 & Ex. 7 ("In regard to the issue of your requested neuropsyche examination, again, we are totally opposed to that on the grounds that there has been no brain damage. If this were a mental examination with a psychiatrist, of course, the issues would be totally different.").) On December 10, 2010, the District's counsel sent Newman's counsel a letter expressing that the District would be filing a motion to compel an independent neuropsychological examination. (Abbott Decl. ¶ 12 & Ex. 8.)

The District's motion to compel was originally filed on December 10, 2010. (Dkt. No. 53.) The hearing on that motion was rescheduled three times to permit further meeting and conferring. (Dkt. Nos. 57, 69, and 70.)

Since the original filing of the motion in December 2010, the parties have been able to pare down their disputed issues. Significantly, the parties have stipulated that: (1) Newman's mental examination may occur in Stockton; (2) Dr. Perrillo may conduct a "standard verbal interview" with plaintiff (but not testing); (3) Dr. Perrillo may administer the "MMPI" but not the "MMPI–RF." (JS at 6.) The parties' remaining dispute is about whether various limitations should be imposed upon the stipulated exam.

According to the joint statement, the remaining disputed issues are: (A) whether Dr. Perrillo can administer any psychological or neuropsychological tests upon Newman during the mental exam; (B) which specific tests Dr. Perrillo may administer during the exam; (c) the duration of the exam; (D) whether Newman may have a "support person" in the room during the clinical interview portion of the exam and/or the testing portion; (E) whether the clinical examination and/or testing may be recorded. (JS at 6.)

Newman argues that Dr. Perrillo is unqualified to conduct all aspects of the exam, that he seeks to perform various "redundant" and "unnecessary" tests upon Newman, and that an exam with six-hour sessions over two days is unreasonably lengthy. (JS at 3, 7–12; Dkt. No. 53–3.) Plaintiff argues that there is good cause requiring a "support person" to accompany her during all portions of the exam. (JS at 15–16.) Plaintiff also argues that her exam should be videotaped, or at the very least, recorded via audiotape. (JS at 20–21.)

The District opposes each of these arguments, and asks the court to order that Newman's independent mental examination be conducted at the following "time, place, manner, conditions, and scope" under Federal Rule 35(a)(2)(b): (1) February 8, 2011, and if necessary, February 9, 2011, (JS at 2); (2) in the office of plaintiff's attorney in Stockton, California (JS at 2); (3) examination by Dr. Perrillo (JS at 2); (4) under the terms and conditions set out in Dr. Perrillo's declaration and the proposed Order filed 12/10/10 (providing that examination will not go past 5:00 p.m. each day, listing tests that may be implemented, etc.). (JS at 2.)

The pending motion and the parties' joint statement re: discovery disagreement, filed pursuant to Eastern District Local Rule 251, address these remaining disputed issues.

## II. DISCUSSION

■ The Federal Rules of Civil Procedure provide that the court "may order a party whose mental or physical condition ... is in controversy to submit to a physical or mental examination by a suitably licensed or certi-

fied examiner." Fed.R.Civ.P. 35(a)(1). Because the parties have stipulated to Newman's mental examination but disagree about various parameters of the exam, they have asked the court to decide those parameters. (JS at 6.) This court has discretion to do so. *E.g., Franco v. Boston Scientific Corp.*, No. 05–CV–1774 RS, 2006 WL 3065580, *1–2, (N.D.Cal., Oct. 27, 2006) (not reported) (noting that a court has discretion to place "limits and conditions" on a mental exam under Rule 35, but ultimately holding that where the plaintiff has pre-existing mental conditions, the exam's scope should not be limited, as the defendant needs to determine "what effects are attributable to" the alleged incident).

### A. Qualifications To Administer The Mental Examination

■ The District argues that its proposed examiner, Dr. Richard J. Perrillo, is qualified to administer and interpret psychological and neuropsychological tests upon Newman. (JS at 7.) The District's argument is well-taken.

Dr. Perrillo is a licensed psychologist with a Ph.D. in Clinical/Counseling Psychology, has 25 years postgraduate experience in the diagnosis of organic brain dysfunctions and emotional/mental disorders, has served as an expert witness in cases involving brain and emotional functioning, and he has served as an agreed medical examiner in Workers' Comp. cases, and has administered and interpreted psychological and neuropsychological testing on thousands of individuals in his career. (JS at 3, 7.) Dr. Perrillo is licensed in Forensic, Clinical, and Neuropsychology (License No. PSY9404, issued 1986). (JS at 6.) Dr. Perrillo has never met Newman. (*Id.*)

Newman counters that Dr. Perrillo is unqualified to conduct her mental exam. (JS at 8–9.) Newman argues that Dr. Perrillo is not suitably qualified to administer "neuro psych" tests and that he is not a "board certified" neuro-psychologist. (JS at 7.) Newman also argues Dr. Perrillo's certifica-

tion came from "various for-profit organizations that basically issue a certification for money...." (JS at 8.)

However, Newman ultimately retreats from her arguments against Dr. Perrillo's administration of her exam. For instance, in the parties' joint statement, Newman's "Conclusion," concedes: "Defendants have the right to pick their examiner in this situation. The fact that he is not certified is their choice. However, it gives the defense an unfair advantage ... to allow [Dr. Perrillo] carte blanche for 12 hours in private." (JS at 8.) And during the hearing on the matter, counsel for Newman conceded that the District was free to select their examiner and admitted that Dr. Perrillo could conduct Newman's mental exam, acknowledging Newman's ability to challenge Dr. Perrillo's qualifications at trial.

■ Rule 35(a)(1) requires that a mental examination be conducted by "a suitably licensed or certified examiner." The Advisory Notes to Rule 35 explain that the court has discretion to determine whether the proposed examiner is "suitably licensed or certified," but this descriptor does not necessarily mean board certification. Fed.R.Civ.P. 35(a) advisory committee's note (1991 amend.). Indeed, whether someone is "suitably licensed or certified" is a function of whether the individual has the requisite level of expertise to conduct the proposed exam. (*Id.*) The term was "intended to encourage the exercise of [judicial] discretion, especially with respect to examinations by persons having narrow qualifications." (*Id.*) In general, a defendant wishing to conduct a Rule 35 mental exam has the right to choose its own examiner. *See Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 609 (C.D.Cal.1995) (although the court "is not required to accept defendants' proposed examiner as the examining psychologist, only if plaintiff raises a valid objection will the Court appoint a different examiner.")[6] Here, Plaintiff has not raised a valid objection to Dr. Perrillo.

---

6. In *Ragge,* the court stated:
 One of the purposes of Rule 35 is to "level the playing field" between parties in cases in which a party's physical or mental condition is in issue.... A plaintiff has ample opportunity for psychiatric or mental examination by his/her own practitioner or forensic expert.

Newman has not shown that Dr. Perrillo is unqualified to administer the stipulated mental exam. Newman does not cite authority indicating that Rule 35's "suitably licensed or certified" requirement entails being certified by any particular board of Newman's choosing. Further, the "proposed examination" appears to call for "expertise that the proposed examiner" has. *See* Fed.R.Civ.P. 35(a) Advisory Committee's note, particularly the "1991 amendment." Dr. Perrillo has declared his expertise in neuropsychology and his experience giving numerous psychological and neuropsychological tests of the same type he will use in the proposed examination of Newman. There is no evidence Dr. Perrillo is biased against Newman, and Newman does not advance that argument. *See Ragge*, 165 F.R.D. at 609 (C.D.Cal.1995) (a defendant wishing to conduct a Rule 35 mental exam has the right to choose its own examiner, provided such person is qualified and cannot be shown upon real objective evidence to have a pre-existing bias against the examinee).

Accordingly, for these reasons and those stated on the record during the hearing, the court orders that Dr. Perrillo may conduct the entirety of Newman's mental examination.

## B. *The Tests To Be Performed*

■ Dr. Perrillo identified 26 potential tests that will comprise the universe of tests he may choose to administer to Newman. (JS at 8; Prop'd Order, Dkt. No. 53–3, Exh. 3 at 2–3.) Newman takes issue with many of these potential tests, and argues that the court should exercise its discretion to limit the scope of the testing. (JS at 10–11.) Newman and her expert argue that Dr. Perrillo's proposed tests are "inappropriate" for Newman's injuries as she complains only of back pain, herniated disk, anxiety and emotional distress. (JS at 10–11.) Newman also argues that Dr. Perrillo's tests are redundant and thus "burdensome." (JS at 10.) Newman and her expert further argue that Dr. Perrillo's proposed IQ tests, motor function tests, language tests, frontal lobe measures, other "batteries of redundant tests," and

MMPI–RF are all "unnecessary." (JS at 11.)

The District counters that the result of one test will dictate the nature of subsequent testing. (JS at 8–9.) The District explains that mental examinations must be "fluid" and require a flexible determination of the testing necessary. (JS at 8–9.) The District argues that the proposed tests will help gauge the extent to which the alleged incident exacerbated Newman's pre-existing mental health issues, and notes that "if the 'wrong' tests are administered," Newman is free to cross-examine on this issue during deposition and trial. (*Id.*) The District's arguments are well-taken.

The court has not been presented with evidence that certain tests will be dangerous or harmful to Newman; instead, Newman's argument is that she should not be subjected to "unnecessary" or duplicative tests that might be "burdensome" to her. (JS at 10–12.) As discussed on the record during the hearing, the court is not a medical professional. Absent evidence that a certain test would cause actual harm to Newman, the court cannot itemize tests that are truly unnecessary or appropriate. These tests are complex, as are Newman's alleged mental issues and their potential causes, and absent a showing of danger or actual harm this court will not hamper the defendants' need for a complete examination of Newman's mental health. *See Ragge*, 165 F.R.D. at 609 ("[b]ecause the mental examination provides one of the few opportunities for a defendant to have access to a plaintiff, and the only opportunity for a defendant to have a plaintiff examined by defendant's expert, some preference should be given to allowing the examiner to exercise discretion in the manner and means by which the examination is conducted, provided it is not an improper examination"; and where the proposed examiner's "declaration sets forth the nature of the examination to be conducted, including the types of psychological tests he may choose to administer ... It would serve no

*Ragge,* 165 F.R.D. at 608 (citations omitted and modifications in original).

purpose to require [examiner] to select, and disclose . . . specific tests.") [7]

Accordingly, for these reasons and those stated on the record during the hearing, the court orders that of the tests Dr. Perrillo proposed (Prop'd Order, Dkt. No. 53–3, Exh. 3 at 2–3), he may conduct the tests he deems necessary. Of course, Dr. Perrillo is expected to act within the bounds of his professional and ethical duties at all times.

### C. The Duration Of The Exam

■ The District proposes that Newman's mental examination occur over two days from 11:00 am to 5:00 pm each day, to occur on February 8 and 9, 2011. (JS at 3; Prop'd Order, Dkt. No. 53–3 at 2.) According to the District, because of Newman's alleged mental issues it may take her longer than most patients to complete a given test, so Dr. Perrillo seeks to have examination go into a second day if necessary. He would like to eliminate time pressure on Newman during testing, and would like to permit Newman to take breaks between tests. (JS at 12–13.) Newman argues that the District's proposed two-day testing is excessive and requests that "this court set reasonable limits by time" upon the exam. (JS at 24.)

Neither party cited compelling, binding, or persuasive authority on the requisite length of mental examinations under Rule 35. Absent such authority, and as discussed on the record during the hearing, the District's proposed duration is reasonable. *Simonelli v. University of California–Berkeley*, No. C02–1107 JL, 2007 WL 1655821, at *1–3 (N.D.Cal. 2007) (unpublished) (denying plaintiff's request to limit a mental examination to three hours, because "the interests of both parties in the examiner's arriving at an accurate diagnosis militates against setting an artificially short time limit on Plaintiff's examination," and ordering the exam to last the requested eight hours given that the plaintiff was not a child, and defendants were not seeking an unlimited time for the exam.)

For these reasons and those stated on the record during the hearing, the court orders two, five-hour testing sessions over a two-day period, inclusive of breaks. This timing strikes a sufficient balance between defendants' need for discovery and Newman's desire for non-duplicative testing. (JS at 12.) However, as described during the hearing, in the event that Newman's need for multiple breaks causes excessive interruptions to tests and/or prevents completion of the testing, the court is amenable to ordering additional testing. However, the parties are encouraged to meet and confer regarding the need for additional testing and the scheduling thereof. As described in the hearing, if need be the parties shall contact the undersigned's courtroom deputy and request a telephonic conference to discuss the potential need for additional testing with the court prior to filing a formal discovery motion on the issue.

### D. *The Presence Of A Third Party Observer or "Support Person" During The Clinical Interview Portion Of The Exam And/Or During The Testing Portion*

■ Newman suggests that third party observers are permitted in situations of "unusual, painful, or dangerous tests or procedures." (JS at 16.) Newman suggests testing may be "psychologically painful" for her. (*Id.*) Newman declares that she will probably "freak out and have a nervous breakdown" if she does not have "at least one support person" in the room with her during the examination. (Newman Decl., Dkt. No. 73 at 1.)

The District argues against a third party's presence during any portion of the exam, and suggests that such presence would harm the integrity of the examination and testing process. (JS at 13–14.) The District's argument is well-taken.

Courts have recognized that the presence of third parties during mental examinations may be distracting and may alter the results

---

**7.** However, limiting the exam to two five-hour sessions will effectively require Dr. Perrillo to administer what he deems to be only the most pertinent and instructive tests, likely eliminating those tests that are truly unnecessary or redundant. At least to some extent, this should assuage Newman's concerns regarding unnecessary testing.

of the testing. *Ragge,* 165 F.R.D. at 609–10. Indeed, "[t]hird party observers may, regardless of their good intentions, contaminate a mental examination." *Id.* (denying third party observer where examiner did not propose to use unorthodox or potentially harmful techniques in his exam.)

Newman admits that while testing may be "psychologically painful" for her "the proposed psychological testing is not necessarily dangerous ..." (JS at 16.) Further, Newman cites no decisions permitting a third party observer because testing had the potential to be "psychologically painful" for the examinee. (JS at 15–16 (citing *Marsch v. Rensselaer County,* 218 F.R.D. 367, 371 (N.D.N.Y.2003)) (court permitted a third party in a Rule 35 examination where patient faced potential criminal prosecution based on responses to tests, and third party was attorney advising him of Fifth Amendment rights); *Romano v. II Morrow, Inc.,* 173 F.R.D. 271, 274 (D.Or.1997) (court denied request for support person and found "that an observer, court reporter, or recording device, would constitute a distraction during the examination and work to diminish the accuracy of the process....").)

For these reasons, and for the reasons stated on the record during the hearing, the court orders that Newman may not have a third party "support person" accompanying her in the exam room during any portion of her exam. However, Newman may have a "support person" nearby during the exam and may visit with that person on breaks as needed. The "support person" may not accompany Newman into the examination room during any part of the exam. This compromise preserves the integrity of the mental examination process under the authorities described above, while permitting Newman the security of knowing she has a "support person" nearby.[8]

---

**E. The Recording Of The Clinical Interview Portion Of the Exam And/Or The Testing Portion**

■ Newman admits that under the "normal procedure" there is no video camera or other recording device at Rule 35 mental exams. (JS at 21) (citing *Morrison v. Stephenson,* 244 F.R.D. 405, 406 (S.D.Ohio 2007) and other cases.) However, Newman argues that the court should exercise its discretion to order videotaping of some or all of her exam to ensure Newman's "peace of mind" and provide a "reference for the fact finder," such that jurors would not have to take Dr. Perrillo's word for what occurred during the examination. (JS at 20–21.)

The District counters by emphasizing that the presence of a recording device may damage the integrity of the exam, and further, that videotaping the exam would violate Dr. Perrillo's ethical and professional duties. (JS at 22.) The District's argument is well-taken.[9]

In the same way third party observation of mental exams is disfavored, the presence of recording devices during such exams is also disfavored. *E.g., Holland v. U.S.,* 182 F.R.D. 493, 496 (D.S.C.1998) (prohibiting videographer and noting that "the majority of federal courts have rejected the notion that a third party should be allowed, even indirectly through a recording device, to observe a Rule 35 examination" and noting that "[c]learly, the presence of a videographer could influence Mr. Holland, even unconsciously, to exaggerate or diminish his reactions to Dr. Westerkam's physical examination. Mr. Holland could perceive the videotape as critical to his case and fail to respond in a forthright manner. In addition, the videotape would give Plaintiffs an evidentiary tool unavailable to Defendant, who has not been privy to physical examinations made of Mr. Holland

---

8. This compromise is particularly appropriate given that as a student in the District, Newman alleges she attended classes in one classroom while her husband sat in a different classroom in the same building, such that she was able to visit him to receive support if she felt it necessary. (Third Am. Compl. ¶ 11–13.)

9. Dr. Perrillo declared that he would not administer the exam if the court required videotaping. (JS at 22.) In its papers and during the hearing, the District argued that because of Dr. Perrillo's extreme position on the matter, an order directing videotaping was tantamount to an order proscribing the mental exam entirely. The court did not consider this argument in reaching its decision. *(Id.)*

by either his treating physicians or any experts he may have retained. Such a result undermines the purpose of Rule 35"); *Romano,* 173 F.R.D. 271 (D.Or.1997) (an "observer, court reporter, or recording device, would constitute a distraction during the examination and work to diminish the accuracy of the [physical examination] process"); *Ragge,* 165 F.R.D. at 609–10 (third party observers are typically prohibited); *Tomlin v. Holecek,* 150 F.R.D. 628, 631–32 (D.Minn.1993) (holding that the presence of a third party during the examination under Rule 35 "would lend a degree of artificiality to the interview technique which would be inconsistent with applicable professional standards").

While courts permit recording in certain circumstances, those circumstances are not present here. *(See e.g., T.B. ex rel. G.B. v. Chico Unified School Dist.,* No. CIV S–07–0926–GEB–CMK, 2009 WL 837468 (E.D.Cal. March 26, 2009)) (unpublished) (court permitted recording of autistic child's exam because child could not fully express himself in words and examiner requested recording; also, the ethical dilemma of secret recording was avoided because the child's mother could consent to the recording on his behalf and recording could thus be kept secret during exam and avoid tainting exam); *(Di Bari v. Incaica Cia Armadora, S.A.,* 126 F.R.D. 12 (E.D.N.Y.1989)) (ordering court reporter to transcribe the exam because of examinee's limited English proficiency). Newman has not alleged an inability to express herself with words or suggested a limited understanding of English, nor has she stated similar circumstances that would warrant recording her exam.[10]

For these reasons, and for the reasons stated on the record during the hearing, the court orders that Newman's mental exam may not be videotaped. However, during the hearing, counsel for Newman urged that in the absence of videotaping, the clinical interview portion of the exam be audiotaped, as required by California procedural law governing mental examinations. Cal. Civ. Proc. § 2032.530(a) ("the examiner and examinee shall have the right to record a mental examination by audio technology"). This is a federal action subject to the Federal Rules of Civil Procedure, not a state action subject to California's procedural rules. *See e.g., Carpenter v. Superior Court,* 141 Cal.App.4th 249, 263, 45 Cal.Rptr.3d 821 (2006) (distinguishing between federal and state procedural requirements in the context of mental examinations and clarifying that "FRCP rule 35(a) does not require what is required by section 2032.320 . . . .") Here, as described above, the issue of Newman's mental examination is governed by Rule 35. Newman cited no authorities suggesting that this court should be bound by California's procedural rule governing mental examinations. However, during the hearing counsel for the District indicated a reluctant willingness to permit only the clinical interview portion of the exam to be recorded via audiotape, on grounds that the clinical interview portion of the exam does not have the same sensitivity as the testing portion of the exam.[11] The court will therefore permit the audiotaping of the clinical interview portion of the exam only.

### F. *Newman's Request For Judicial Notice*

In connection with the pending motion, Newman filed a Request for Judicial Notice ("RJN") asking that the court take notice of the Third Amended Complaint and the parties' "Stipulation re: Physical Examination of Shirley A. Newman." (RJN, Dkt. No. 76). The RJN is denied.

Facts subject to judicial notice are those which are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and

---

10. While Newman argues that a recording of the exam would avoid pitting "plaintiff Newman with her known psychological defects versus [a] Neuropsychologist on the stand," Newman's desire to have a recording to rebut or potentially impeach Dr. Perrillo is not a valid reason for ordering recording of the exam. (JS at 22.)

11. Of note, during the hearing counsel for the District also indicated that the clinical portion of the exam would be "provisionally" audiotaped pending a ruling from the court. This willingness to audiotape the proceeding, even provisionally, belies any argument that such tape recording would infect the integrity of the exam.

ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). The party requesting judicial notice bears the burden of persuading the court that the particular fact is not reasonably subject to dispute and is capable of immediate and accurate determination by resort to a source "whose accuracy cannot reasonably be questioned." *In re Tyrone F. Conner Corp., Inc.,* 140 B.R. 771, 781 (Bkrtcy.E.D.Cal.1992). A court may not take judicial notice of a matter that is in dispute. *Lee v. City of Los Angeles,* 250 F.3d 668, 690 (9th Cir.2001) (impliedly overruled on other grounds as discussed in *Gallardo v. DiCarlo,* 203 F.Supp.2d 1160, 1162 n. 2 (C.D.Cal.2002) (addressing heightened pleading standards in cases involving individual government officials).)

 As to the parties' stipulation about Newman's physical exam, as indicated by the authorities above, such stipulations are not generally the sorts of documents that are judicially noticeable. Moreover, Newman has not stated any legal or factual bases suggesting this particular stipulation should be judicially noticed. Therefore, the RJN is denied as to the parties' "Stipulation re: Physical Examination of Shirley A. Newman."

 As to the Third Amended Complaint, while the Court may take judicial notice of its own records, including pleadings, a party requesting judicial notice bears the burden of persuading the trial judge that the fact is a proper matter for judicial notice. *In re Tyrone F. Conner Corp., Inc.,* 140 B.R. at 781–82 (judicially noticing documents in the court's file does not include noticing the truth of the facts asserted in each document). Newman has not met this burden. Newman's RJN does not state any authorities or factual bases for judicially noticing the Third Amended complaint. The joint statement cites to the RJN to substantiate propositions that, for instance, Newman "wore a special

bracelet to help identify her as special medical and psychological needs." (JS at 4 (citing RJN).) The court cannot take judicial notice of alleged (and potentially disputed) facts like this one. Similarly, the joint statement cites to the RJN to substantiate the statement that "Plaintiff Newman does not allege or claim any organic or physical brain injury resulting from the event." (JS at 5 (citing RJN).) The court cannot take judicial notice of disputed facts, including whether Newman's alleged damages are pleaded broadly enough to be read as encompassing "physical" brain injury. Therefore, while the Third Amended Complaint is a document that may subject to judicial notice, given Newman's suggested purposes for taking such notice, the RJN is denied.[12]

## III. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. The District's motion is granted;

2. On February 8 and 9, 2011,[13] or on other days agreeable to the parties' counsel, Newman shall attend and undergo a mental examinations consistent with the parameters set forth above and during the hearing on the matter, specifically that:

a. Dr. Perrillo is qualified to conduct the clinical interview and testing portions of Newman's mental exam;

b. The court will not prohibit Dr. Perrillo from administering specific tests from his proposed list of 26 tests (Prop'd Order, Dkt. No. 53–3, Exh. 3 at 2–3);

c. The exam will occur over two five-hour sessions in a two-day period, inclusive of breaks, but the court will be amenable to ordering additional testing should there be excessive breaks or breaks invalidating in-progress tests;

d. There will be no "support person" permitted in the examination room with Newman for any portion of the examination, however, a "support person"

---

12. The court has cited to allegations within the Third Amended Complaint within this order where necessary to provide context for the parties' discovery dispute, but the court declines to take judicial notice of the truth of any alleged fact or the scope of Newman's alleged damages.

13. This order does not limit the parties' ability to agree to a different location or starting time.

may be in the vicinity and available to Newman during breaks;

e. No portion of the examination will be recorded via videotape;

f. The clinical examination portion of the examination may be recorded via audiotape.

3. In conducting the examinations, Dr. Perrillo shall in all respects exercise his professional judgment consistent with his professional and ethical obligations, including whenever practical or appropriate limiting inquiries into Newman's psychological and mental condition before and after the acts alleged in the Third Amended Complaint to those inquiries necessary to elicit responses that have a bearing on the matters at issue in this litigation;

4. Newman's Request for Judicial Notice is denied.

IT IS SO ORDERED.