**Harold W. DUNCAN and Joyce P. Duncan, Plaintiffs,**

v.

**The UPJOHN COMPANY, Defendant.**

**Civ. No. 2:91CV58(AHN).**

United States District Court, D. Connecticut.

March 9, 1994.

Paul W. Orth, Rosina Francia, Shipman and Goodwin, Edward J. Daly, Jr., Silvester, Daly and Delaney, Hartford, CT, Thad Harkins, Green, McReynolds and Green, San Antonio, TX, for plaintiffs.

R. Cornelius Danaher, Jr., Vincent A. Errante, Frank H. Santoro, Danaher, Tedford, Lagnese and Neal, Hartford, CT, for defendant.

### RULING ON MOTION FOR PSYCHIATRIC EXAMINATION

SMITH, United States Magistrate Judge.

The plaintiffs, Harold W. Duncan and Joyce P. Duncan, brought this action against the Upjohn Company claiming, *inter alia*, that the defendant was negligent in the testing and marketing of Halcion, a tranquilizer. The plaintiffs claim that the drug caused Mr. Duncan to become psychologically unstable and caused him to undergo a drastic personality change. Further, the plaintiffs allege that the negligence of the defendant caused Mr. Duncan permanent medical, psychological, and psychiatric injury.

Pursuant to Fed.R.Civ.P. 35, the defendant Upjohn Company has moved for an order requiring Mr. Duncan to undergo a psychiatric examination. The plaintiffs oppose the motion, arguing that the information Upjohn seeks is available from medical records already produced by the plaintiff, thus negating the "good cause" requirement of Rule 35. Alternatively, if the motion is granted, the plaintiffs propose several modifications to the defendant's request relating to the site of the examination, the presence of Mr. Duncan's own psychiatrist, and the selection of the examining doctor.

### I. Standard for Granting Psychiatric Examination

■ The Federal Rules provide:

[w]hen the mental or physical condition ... of a party ... is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner.... The order may be made only on motion for good cause shown....

Fed.R.Civ.P. 35. Thus, there is a two-part test for determining whether the motion will be granted. First, the physical or mental state of the party must be in controversy. Second, the moving party must show good cause as to why the motion should be granted. *Schlagenhauf v. Holder*, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964).

■ In *Schlagenhauf*, the Court discussed the "in controversy" and "good cause" elements of Rule 35. Unlike the situation in most discovery disputes, because of these two requirements in Rule 35, mere relevance is insufficient to justify a psychiatric exam. Rather, the moving party must make an affirmative showing "that each condition as to which an exam is sought is really and genuinely in controversy." *Schlagenhauf*, 379 U.S. at 118, 85 S.Ct. at 242–43.

### A. The "In Controversy" Requirement

■ In this case, the plaintiffs' suit is founded on a claim of psychiatric harm brought about by the use of Halcion, a drug manufactured by the defendant. In addition to claiming past mental harm, Mr. Duncan

also claims to suffer from ongoing psychiatric problems. Specifically, plaintiff claims:

> As a direct and proximate result of the defendant's unreasonably dangerous and defective product, the plaintiff became psychologically unstable and was forced to incur extensive medical, psychological and psychiatric treatment.... [His] entire personality changed.... [T]he plaintiff became totally disabled and institutionalized.... [T]he plaintiff will experience permanent medical, psychological and/or psychiatric impairment.

Complaint, ¶¶ 15–21.

Similarly, Mr. Duncan's responses to defendant's discovery requests establish that plaintiffs' claims are based on Mr. Duncan's "suffer[ing] and ... continue[d] ... suffer[ing of] physical and psychological damage as a direct and proximate result of his use of the defendant's unreasonably dangerous and defective product...." (Plaintiff's Supplemental Response to Defendant's First Set of Interrogatories, dated January 17, 1992, at 4, 6). Plaintiff used the same language in his supplemental response dated May 8, 1992.

Since plaintiff claims that he suffers ongoing psychiatric harm, the plaintiff has placed his psychiatric state in controversy. *Bridges v. Eastman Kodak*, 850 F.Supp. 216 (S.D.N.Y.1994); *Hodges v. Keane*, 145 F.R.D. 332 (S.D.N.Y.1993); *Tomlin v. Holecek*, 150 F.R.D. 628 (D.Minn.1993). This component of Rule 35, therefore, is satisfied.

### B. The "Good Cause" Requirement

■ Not only must a party's mental state be in controversy, there must also be good cause justifying a psychiatric examination. Here, plaintiff claims that Upjohn was negligent in its design and testing of Halcion, and, further, knew or should have known of its dangerous characteristics. (Complaint ¶ 13f–13h).

In *Schlagenhauf*, the Court stated:

> A plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury.

379 U.S. at 119, 85 S.Ct. at 243. Courts have read *Schlagenhauf* as merging the "in controversy" and "good cause" requirements of Rule 35 when a plaintiff claims an ongoing mental injury in a negligence action. *Peters v. Nelson*, 153 F.R.D. 635 (N.D.Iowa 1994); *Tomlin*, 150 F.R.D. 628. By claiming ongoing psychiatric harm caused by the negligence of the defendant, therefore, the plaintiff has placed his mental state in controversy, which in turn constitutes good cause for ordering a psychiatric examination under *Schlagenhauf*.

In addition to meeting the good cause requirement in *Schlagenhauf*, there are other indicia of good cause present in this case. The plaintiff intends to prove his claim at trial through the testimony of his own expert witnesses, which also constitutes good cause for permitting the defendant to conduct its own psychiatric examination of the plaintiff. *Tomlin*, 150 F.R.D. at 630; *Lowe v. Philadelphia Newspapers, Inc.*, 101 F.R.D. 296 (E.D.Pa.1983).

Furthermore, one purpose in granting a request for a psychiatric examination pursuant to Rule 35 is to "preserve[ ] the equal footing of the parties to evaluate the plaintiff's mental state...." *Tomlin*, 150 F.R.D. at 633. Thus, while plaintiff has produced voluminous medical records and reports, which he claims are sufficient to evaluate his mental state at all relevant times, this production does not necessarily negate the defendant's interest in an independent examination of the plaintiff. Only if no additional relevant information could be gained by an examination of Mr. Duncan should the motion for a psychiatric examination be denied. *Schlagenhauf*, 379 U.S. at 118, 85 S.Ct. at 242 (holding availability of information from another source is a relevant consideration).

The defendant has met the burden of showing that plaintiff has placed his mental state in controversy and, furthermore, that there is good cause for such an examination. The defendant's motion therefore is granted, subject to the conditions set forth in the remainder of this Ruling.

## II. The Examining Doctor

■ The defendant has proposed that the psychiatric examination be performed by Dr. Douglas Jacobs, a psychiatrist with offices in Wellesley Hills, Massachusetts.[1] Plaintiff asserts that an expert hired by the defendant to perform the psychiatric examination might be biased if the expert, or an institution the expert is associated with, accepts research money from Upjohn. The plaintiff asks, therefore, that whoever is chosen to perform the examination "certify that he or she has not received any form of grant or research funding from Upjohn (or other drug manufacturer), *and* is not associated with any institution that has any such company[-]supported research, grants, or even donations." (Memorandum in Support of Plaintiffs' Objection to Defendant's Motion for Psychiatric Examination at 10–11).

Defendant responds to this request by noting that any witness may be impeached by a showing of bias, citing *United States v. Abel,* 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). Defendant also asserts that to permit the limits on expert witnesses proposed by the plaintiff would be analogous to disallowing a party from using paid experts. (Defendant's Reply to Plaintiff's Objection to Defendant's Motion for Psychiatric Examination at 7).

■ The court is not required to accept the defendant's proposed physician as the examining physician. *Stinchcomb v. United States,* 132 F.R.D. 29 (E.D.Pa.1990). Only if plaintiff raises a valid objection to the witness, however, will the court appoint a physician different from the one proposed by the defendant. *Powell v. United States,* 149 F.R.D. 122 (E.D.Va.1993). In *Powell,* the plaintiff objected to defendant's proposed physician on the grounds that, because the physician was regularly employed by insurance companies and defendants to perform medical examinations, he was biased in favor of defendants. The court rejected this argument, stating that the plaintiff had not demonstrated personal bias on the part of the proposed physician. There was no business or social or attorney-client relationship between the physician and attorney to justify the appointment of a different physician. *Powell,* 149 F.R.D. at 124; *see also Main v. Tony L. Sheston–Luxor Cab Co.,* 249 Iowa 973, 89 N.W.2d 865 (1958) (rejecting physician who was also a client of defendant's attorney); *Adkins v. Eitel,* 2 Ohio App.2d 46, 206 N.E.2d 573, 31 O.O.2d 95 (1965) (holding an abuse of discretion by trial court to appoint physician when attorney refused four times to answer questions regarding their business relationship).

■ In the instant matter, however, the plaintiff has not come forward with any persuasive showing of why Dr. Jacobs should not be allowed to conduct the examination. Plaintiff is free to attempt to impeach the witness at trial by bringing to the jury's attention any funding that the witness, or any institution the witness is associated with, has received from Upjohn or other drug companies. The witness's status as one who receives funding from Upjohn goes to credibility and not to the admissibility of the testimony. *Abel,* 469 U.S. at 51–52, 105 S.Ct. at 468–469. Cross-examination provides an adequate safeguard against bias on the part of a witness. *Powell,* 149 F.R.D. at 124.

That portion of defendant's motion requesting that Dr. Jacobs be allowed to perform a psychiatric examination of Mr. Duncan, therefore, is granted.

### III. Presence of Plaintiff's Psychiatrist

■ Plaintiffs have requested that Mr. Duncan's own psychiatrist be present as an observer during the examination. While some courts have allowed such an arrangement, *see, e.g., Lowe v. Philadelphia Newspapers, Inc.,* 101 F.R.D. 296 (E.D.Pa.1983), other courts have arrived at the opposite conclusion, finding that the success of a given psychiatric exam relies on an unimpeded conversation between physician and patient. *See, e.g., Tomlin v. Holecek,* 150 F.R.D. 628, 632 (D.Minn.1993); *Brandenburg v. El Al,* 79 F.R.D. 543, 546 (S.D.N.Y.1978). The *Tomlin* court reasoned that to allow a third person to

---

**1.** Initially, plaintiff objected to the examination taking place at Dr. Jacobs's offices in Massachusetts. At oral argument, plaintiff's counsel indicated that the only problem with requiring plaintiff to travel to Wellesley Hills was one of travel arrangements.

be present at such an examination would subvert the purpose of Rule 35, which is to put both plaintiff and defendant on an equal footing with regard to evaluating the plaintiff's mental status. *Tomlin,* 150 F.R.D. at 633.

The *Tomlin* court also noted that it had the authority to appoint a physician different from the one proposed if the physician planned to use a discredited technique or one of questionable validity, or one that jeopardized the patient's well-being. *Tomlin,* 150 F.R.D. at 632. At oral argument, plaintiff cited concern over the "practice effect" neuropsychological testing might have on Mr. Duncan, yet also stated that the testing proposed by the defendant poses no danger to Mr. Duncan's rehabilitation.

Because Dr. Jacobs does not propose to use unorthodox or potentially harmful techniques in his examination of Mr. Duncan, the court finds that there is no need for any of plaintiff's physicians or other mental health professionals to be present during the examination of Mr. Duncan.

### IV. Conclusion

For the reasons stated above, the defendant's motion for a psychiatric examination of the plaintiff **(filing # 135) is GRANTED.** Harold W. Duncan is hereby **ORDERED** to submit to a psychiatric examination, said examination to be conducted by Dr. Douglas Jacobs at his offices in Wellesley Hills, Massachusetts, at a date to be determined by the parties but no later than April 8, 1994. It is further **ORDERED** that defendant Upjohn Company provide a limousine to transport Mr. Duncan to and from Dr. Jacobs's offices in Wellesley Hills, furnish meals for Mr. Duncan on the day of the examination, and pay any necessary expenses incurred by Mr. Duncan while complying with this order.

This is not a recommended ruling but a ruling on discovery, which is subject to a "clearly erroneous" standard of review upon a timely application to the district judge. See 28 U.S.C. § 636; Fed.R.Civ.P. 6(a) 6(e)

& 72; and Rule 2 of the Local Rules for United States Magistrate Judges.

**SO ORDERED.**