Reynaldo ORNELAS, Plaintiff,

v.

SOUTHERN TIRE MART,
LLC, Defendant.

Civil Action No. 5:12–cv–132.

United States District Court,
S.D. Texas,
Laredo Division.

March 28, 2013.

Javier Villarreal, Attorney at Law, Brownsville, TX, for Plaintiff.

Eddy L. De Los Santos, Baker Donelson, Houston, TX, for Defendant.

## MEMORANDUM AND ORDER

J. SCOTT HACKER, United States Magistrate Judge.

Pending before the Court is "Defendant's Motion to Examine Plaintiff," (Dkt. No. 15), filed March 4, 2013. Therein, Defendant, Southern Tire Mart, LLC, "asks the Court to order Plaintiff to submit to physical and mental examinations with Defendant's experts, as authorized by Federal Rule of Civil Procedure 35." (*Id.* at 1). More specifically, "Defendant proposes that Dr. Gregory Goldsmith, Dr. Francisco Perez, and Mr. William Quintanilla be allowed to conduct the personal examinations of Plaintiff." (*Id.* ¶ 9). Dr. Goldsmith is a board certified orthopedic surgeon, Dr. Perez, a board certified neuropsychologist, and Mr. Quintanilla, a vocational rehabilitation expert. (*Id.*).

In support of its motion, Defendant contends that "Plaintiff's physical and mental condition is in controversy," as Plaintiff has alleged "ongoing" and "'extensive physical and emotional injuries,'" which include "'cervical and lumbar sprains and multiple disc herniations to his neck.'" (*Id.* ¶ 7). Defendant additionally argues that good cause exists to compel Plaintiff to submit to the aforementioned examinations "to determine the extent of Plaintiff's alleged injuries and the future impact of those injuries on Plain-

tiff." (*Id.* ¶ 8). Plaintiff Reynaldo Ornelas has filed a "Response to Defendant's Motion to Examine Plaintiff," (Dkt. No. 16), wherein he "requests that the Court deny Defendant's motion," or in the alternative, that the Court impose specifically articulated limitations on the examinations. (*Id.* at 1–3). Plaintiff spends the entirety of his motion arguing in support of his proposed "reasonable limitations [and] restrictions," and does not otherwise defend his contention that the Court should deny the requested examinations. (*See id.*).

## I. DISCUSSION
### A. Legal Standard

■ Federal Rule of Civil Procedure 35 grants courts the discretionary authority to order a party "whose mental or physical condition ... is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R.Civ.P. 35(a)(1). Because parties have no inherent right to examine the mental or physical health of an adversary, *Hertenstein v. Kimberly Home Health Care, Inc.,* 189 F.R.D. 620, 623 (D.Kan.1999), the court's order may be made "only on motion for good cause" and on notice to all parties and the person to be examined. Fed.R.Civ.P. 35(a)(2)(A). Rule 35, as contrasted with the other discovery provisions, is distinct in its requirements that the party requesting such a mental or physical examination must affirmatively establish that the condition is "in controversy" and "good cause" exists for the examination, two requirements which are "necessarily related." *Lahr v. Fulbright & Jaworski, L.L.P.,* 164 F.R.D. 196, 199 (N.D.Tex.1995) (citing *Schlagenhauf v. Holder,* 379 U.S. 104, 117, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964)). The Supreme Court has made explicit that "there must be a greater showing of need under Rule[ ] ... 35 than under the other discovery rules;" to require otherwise, and to accept a showing of mere relevance, would render the "good cause" requirement meaningless. *See Schlagenhauf,* 379 U.S. at 118, 85 S.Ct. 234. Thus, while the Federal Rules of Civil Procedure are to be liberally construed, they "should not be expanded by disregarding plainly expressed limitations." *Id.* at 121, 85 S.Ct. 234.

### a. The "In Controversy" Requirement

■ The Rule 35 inquiry has been deemed "intensively fact-specific," which contributes to the inconsistent rulings issuing from federal courts. *Lahr,* 164 F.R.D. at 199. There are two primary ways in which the mental or physical condition of a plaintiff may be placed "in controversy" in the context of Rule 35. One scenario is where the defendant seeks to place the plaintiff's health in controversy by way of an asserted defense to the underlying action. *Bowen v. Parking Auth. of City of Camden,* 214 F.R.D. 188, 192 (D.N.J.2003). In such cases, the defendant bears the burden of showing that the plaintiff's mental or physical state is in controversy. *Womack v. Stevens Transp., Inc.,* 205 F.R.D. 445, 447 (E.D.Pa.2001). Alternatively, the plaintiff can place his or her mental or physical condition in controversy through representations made during the course of litigation. There are situations where the pleadings alone are sufficient to establish the "in controversy" requirement. *Schlagenhauf,* 379 U.S. at 119, 85 S.Ct. 234. "A plaintiff in a negligence action who asserts mental or physical injury ... places that mental or physical injury clearly in controversy...." *Id.* (internal citations omitted).

### b. The "Good Cause" Requirement

■ As delineated above, the Rule requires not only that the court find the mental or physical condition of the plaintiff to be "in controversy," but also mandates "discriminating application" by the court to ensure "good cause" exists for the requested examinations. *Id.* at 118, 85 S.Ct. 234. "Good cause" requires a showing that the examination could adduce specific facts relevant to the cause of action and necessary to the defendant's case. *Ragge v. MCA/Universal Studios,* 165 F.R.D. 605, 609 (C.D.Cal. 1995). While the probability of obtaining the information through other sources is pertinent to the "good cause" inquiry, *Fischer v. Coastal Towing Inc.,* 168 F.R.D. 199, 200 (E.D.Tex.1996) (citing *Schlagenhauf,* 379 U.S. at 118, 85 S.Ct. 234); *Lahr,* 164 F.R.D. at 200, a plaintiff may not avoid a Rule 35

examination simply on the grounds that other sources of information, such as medical reports and depositions of plaintiff's treating physicians, are available. *Jackson v. Entergy Operations, Inc.*, Nos. Civ.A. 96–4111, Civ.A. 97–0943, 1998 WL 28272, at *2 (E.D.La. Jan. 26, 1998); *Ferrell v. Shell Oil Co.*, Civ. A. No. 95–0568, 1995 WL 688795, at *1 (E.D.La. Nov. 20, 1995). Indeed, courts have continually looked to whether the plaintiff has retained his own experts, and whether he intends to prove his claims through their testimony at trial, as relevant to a finding of "good cause." *See, e.g., Lahr*, 164 F.R.D. at 200 (citing *Duncan v. Upjohn*, 155 F.R.D. 23, 25 (D.Conn.1994)). This is largely because "one purpose in granting a request for a[n] … examination pursuant to Rule 35 is to 'preserve the equal footing of the parties.'" *Duncan*, 155 F.R.D. at 25 (quoting *Tomlin v. Holecek*, 150 F.R.D. 628, 633 (D.Minn.1993); *see also McDonald v. Southworth*, No. 1:07–cv–217–JMS–DFH, 2008 WL 2705557, at *4 (S.D.Ind. July 10, 2008) (finding that although "a court may be reluctant to subject a plaintiff to lengthy, invasive" testing, because "the plaintiff is the one who initiates the action and seeks damages … it would not be fair to permit a plaintiff to routinely rely on the very condition of which he complains to defeat a defendant's ability" to disprove the plaintiff's allegations) (internal citations and quotation marks omitted). Even where a plaintiff chooses to forgo the use of an expert, courts have found that a defendant should not be compelled to limit its case to mere cross examination, as expert testimony can be essential to afford a defendant adequate opportunity to challenge the plaintiff's claim. *Womack*, 205 F.R.D. at 447 ("The promulgators of Rule 35 deemed that the opportunity to cross-examine was an 'insufficient test of truth' and as a result, independent examinations were prescribed.") (quoting *Tomlin*, 150 F.R.D. at 632); *Bethel v. Dixie Homecrafters, Inc.*, 192 F.R.D. 320, 322–23 (N.D.Ga.2000) (quoting *Ali v. Wang Labs., Inc.*, 162 F.R.D. 165, 168 (M.D.Fla.1995)). Notwithstanding all of the above generalities, the *Schlagenhauf* Court also made clear that "a plaintiff in a negligence action who asserts mental or physical injury … provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." 379 U.S. at 119, 85 S.Ct. 234.

## B. Examinations Proposed By Defendant

So long as the "in controversy" and "good cause" requirements are met for each requested exam, Rule 35 does not otherwise limit the number of examinations a party may be required to undergo, nor would such a limitation be judicious. *Sadler v. Acker*, 263 F.R.D. 333, 336 (M.D.La.2009); *Peters v. Nelson*, 153 F.R.D. 635, 637 (N.D.Iowa 1994). Each request for an independent examination "must turn on its own facts," and depends solely on the circumstances underlying the request. *Peters*, 153 F.R.D. at 637; *Moore v. Calavar Corp.*, 142 F.R.D. 134, 135 (W.D.La.1992). The number of examinations ordered should merely "be held to the minimum necessary considering the party's right to privacy and the need for the court to have accurate information." *Sadler*, 263 F.R.D. at 336 (citations and internal quotation marks omitted). And thus the Court turns to each of the examinations that Defendant has requested Plaintiff to submit to in this matter.

*a. Examination by Dr. Gregory Goldsmith, Board Certified Orthopedic Surgeon, and Examination by Mr. William Quintanilla, Vocational Rehabilitation Expert*

Two of the examinations sought by Defendant mandate only brief analysis. Plaintiff in this case has asserted a negligence claim against Defendant, arising out of a motor vehicle collision which caused him to suffer "extensive physical and emotional injuries as a result of [the] collision." (*See* Dkt. No. 1, Attach. 2, ¶¶ 5.1, 5.6). The impact of the collision allegedly resulted in "cervical and lumbar sprains and multiple disc herniations to [Plaintiff's] neck," which has since led to surgery for Plaintiff, in addition to "extensive physical therapy, daily medication and injections to control the pain caused by the injuries sustained in [the] vehicular collision." (*Id.* ¶ 5.6). Plaintiff therefore seeks damages for "[r]easonable medical care and

expenses" for both past and future; "[p]hysical pain and suffering in the past and in the future;" "[p]hysical impairment in the past and which, in all reasonable probability, will be suffered in the future;" and "[l]oss of earnings in the past and which will, in all probability, be incurred in the future." (*Id.* ¶ 8.1).

As indicated above, a plaintiff in a negligence action who asserts physical injury squarely places that condition "in controversy" and also provides the court "good cause" for ordering an examination to determine the existence and extent of the claimed injury. *Schlagenhauf,* 379 U.S. at 119, 85 S.Ct. 234. Defendant is therefore entitled to have Dr. Goldsmith examine Plaintiff to determine the extent of his injuries. *See Regan v. Trinity Distrib. Servs., Inc.,* 251 F.R.D. 108, 110 (W.D.N.Y.2008) (finding it "uncontested" that the plaintiff had placed his physical condition in controversy in a negligence action arising from a motor vehicle collision, thereby finding good cause to order a Rule 35 examination). Additionally, Plaintiff seeks damages for loss of earnings, both those lost in the past and those likely incurred in the future. Plaintiff has seemingly thus placed his physical capabilities and state of employability at issue, which will have a direct impact on the issue of damages. *See Lee v. Gulf Fleet Marine Corp.,* 110 F.R.D. 307, 308 (E.D.La. 1986). Although a few rogue courts have ruled otherwise, *see, e.g., Storms v. Lowe's Home Centers, Inc.,* 211 F.R.D. 296, 297–98 (W.D.Va.2002); *In re Falcon Workover Co., Inc.,* 186 F.R.D. 352, (E.D.La.1999),[1] examinations by vocational rehabilitation experts are repeatedly found to be warranted where the scope and extent of the plaintiff's future employability are at issue. *See, e.g., Monroe v. Cooper/T. Smith Stevedoring Co., Inc.,* No. 06–933–B–M2, 2008 WL 687196, at *3 (M.D.La. Mar. 10, 2008); *Wilks v. Epic Ma-*

*rine, LLC,* No. Civ.A. 03–0152, 2003 WL 22272191, at *1–2 (E.D.La. Sept. 26, 2003); *Douris v. County of Bucks,* No. CIV. A. 99–3357, 2000 WL 1358481, at *2–3 (E.D.Pa. 2000); *Jefferys v. LRP Publ'ns, Inc.,* 184 F.R.D. 262, 263 (E.D.Pa.1999); *Fischer,* 168 F.R.D. at 201; *Lee,* 110 F.R.D. at 308. As such, Plaintiff shall also submit to an examination by Mr. Quintanilla. Therefore, Defendant's request regarding Dr. Goldsmith and Mr. Quintanilla is GRANTED.

### b. *Examination by Dr. Francisco Perez, Board Certified Neuropsychologist*

■ Whether Plaintiff should be required to submit to an examination with Defendant's neuropsychologist presents a more complicated question. The determination as to whether a plaintiff has placed his or her mental condition "in controversy" has led to considerable divergence of opinions among federal courts. *Bowen,* 214 F.R.D. at 193 (citing *Ziemann v. Burlington County Bridge Comm'n,* 155 F.R.D. 497, 501 (D.N.J.1994) (collecting cases supporting the proposition)). "To put a mental condition in controversy, a plaintiff must assert a claim for mental, [emotional,] or psychiatric injury." *Bradford Felmly v. Hills,* 222 F.R.D. 257, 259 (D.Vi. 2004) (quoting *Turner v. Imperial Stores,* 161 F.R.D. 89, 94 (S.D.Cal.1995)). However, courts generally agree that "for a plaintiff's mental status to be 'in controversy' requires more than 'garden variety' emotional distress" or mental anguish allegations that are merely attendant to the suffering of or recovery from a physical injury. *Bowen,* 214 F.R.D. at 193 (citing a number of cases); *see also Bradford Felmly,* 222 F.R.D. at 259 (because "anguish" was the only emotional injury alleged, finding that the " 'garden variety' type of claim [was] not sufficient to place [the] plaintiff's mental status in controversy"). Rather, courts have determined that in addition to a generic claim of emotional dis-

---

**1.** A number of these rulings arose out of a prior version of Federal Rule of Civil Procedure 35, which authorized the court to "order [a] party to submit to a physical examination by a physician, or mental examination by a physician or psychologist...." Fed.R.Civ.P. 35(a). Courts thus found that "a vocational rehabilitation expert is not a physician under Rule 35." *Acosta v. Tenneco Oil Co.,* 913 F.2d 205, 209 (5th Cir. 1990). The present version of Rule 35 emerged

after a 1991 amendment to the Rule, which was subsequent to *Acosta,* and extended the Rule to include examinations by "other certified or licensed professionals, such as dentists or occupational therapists, who are not physicians or clinical psychologists, but who may be well-qualified to give valuable testimony about the physical or mental condition that is the subject of dispute." Fed.R.Civ.P. 35(a), advisory committee notes, 1991 amendment.

tress or mental anguish, one of the following conditions must be present to warrant a finding that the plaintiff's mental condition is "in controversy": 1) a cause of action for intentional or negligent infliction of emotional distress; 2) an allegation of specific mental or psychiatric injury or disorder; 3) a claim of unusually severe emotional distress; 4) plaintiff's offer of expert testimony to support such a claim; or 5) plaintiff's concession that his or her mental condition is "in controversy" within the meaning of Rule 35. *See Ford v. Am. River Transp. Co.*, No. 5:11CV-00094–R, 2012 WL 4049467, at *3 (W.D.Ky. Sept. 13, 2012) (citing *Houghton v. M & F Fishing, Inc.*, 198 F.R.D. 666, 668 (S.D.Cal. 2001) (requiring that there be "psychological implications that ... play a real role in the [p]laintiff's damages" before finding plaintiff's mental status is in controversy); *Shadix–Marasco v. Austin Reg'l Clinic P.A.*, No. A–09–CA–891 LY, 2011 WL 2011483, at *3 (W.D.Tex. May 20, 2011) (noting that "when ... mental injuries will be an important component of [the plaintiff's] damages, good cause exists to permit defendant to select its own expert in that field to examine [the plaintiff]."); *Harris v. Fort Bend Indep. Sch. Dist.*, No. H–07–635, 2007 WL 7238941, at *1 (S.D.Tex. Dec. 27, 2007) (concluding that "where [p]laintiffs additionally allege a specific mental or psychiatric injury or offer expert testimony in support [of] a[n] emotional distress claim, courts have found good cause for ordering such an exam."); *Greenhorn v. Marriott Intern., Inc.*, 216 F.R.D. 649, 651–52 (D.Kan.2003) (considering that the allegations made by plaintiff "reflect ... that she has suffered specific [mental and emotional] injuries," such that "the average lay person might not be able to evaluate ... [the] extent and cause of the injuries," concluding that plaintiff's claim extended beyond "simply a 'garden variety' claim for emotional distress"); *Lahr*, 164 F.R.D. at 199 (noting "a distinction between the cases has emerged in favor of an examination when a plaintiff has alleged a separate tort claim for emotional distress."); *Turner*, 161 F.R.D. at 95. Courts have otherwise found that "one crucial element" necessary to ordering a mental examination "is the existence of an allegation of present, ongoing, or permanent mental

injury or disorder." *Bowen*, 214 F.R.D. at 195; *see Hodges v. Keane*, 145 F.R.D. 332, 335 (S.D.N.Y.1993) ("Indeed, to find that allegations of past pain and suffering necessarily triggered the Rule 35(a) threshold of placing one's 'mental condition in controversy' would open the floodgates to requests for mental examinations whenever a plaintiff alleged past pain and suffering...."). *Compare Duncan*, 155 F.R.D. at 25 (relying on fact that plaintiff alleged "ongoing psychiatric harm" in determining that he had "placed his psychiatric state in controversy."), *with Bridges v. Eastman Kodak Co.*, 850 F.Supp. 216, 222 (S.D.N.Y.1994) (because plaintiffs neither claimed "their mental injury [was] ongoing" nor admitted "that they suffered from a psychiatric disorder," the allegations of "past ... pain and suffering" did not form the basis for ordering a Rule 35 examination).

▪ Here, Plaintiff seeks damages for "[m]ental anguish in the past and in the future." (Dkt. No. 1, Attach. 2, ¶ 8.1). Although Plaintiff claims that he suffered "extensive physical and emotional injuries as a result of [the] collision," (*id.* ¶ 5.6), there are no other indications that Plaintiff is alleging mental injury. He has not asserted a separate tort claim for emotional distress, nor has he alleged a specific mental injury. Defendant has not otherwise brought forth evidence suggesting that Plaintiff will be offering his own expert testimony in support of "mental anguish" damages or suggested to the Court that Plaintiff has conceded his mental condition is in controversy. Moreover, it appears to the Court that Plaintiff relies solely on past mental anguish and emotional injuries, as opposed to ongoing or permanent mental damages. Thus, this is seemingly a "garden variety," "routine request for damages for mental anguish," which "does not place a party's mental condition in controversy." *Pearson v. City of Austin*, No. Civ.A. 99–CA–434JN, 2001 WL 681663, at *1 (W.D.Tex. Apr. 4, 2001). "Rule 35 was not intended to authorize sweeping probes into a plaintiff's psychological past simply because the plaintiff has been injured and seeks damages for mental anguish as a result of the injury," *E.E.O.C. v. Old W. Furniture Corp.*,

173 F.R.D. 444, 446 (W.D.Tex.1996). Consequently, the Court must at this time conclude that Plaintiff's mental condition has not been shown to be "in controversy." That being said, there are possibly a number of facts known to the parties, which are not now before the Court. If Defendant can come forward with evidence suggesting that a mental examination of Plaintiff is in fact warranted, evidence which indicates one of the aforementioned conditions are present in Plaintiff's case, the Court invites Defendant to do so. Also relevant to the Court would be evidence indicating that Plaintiff has retained his own neuropsychological expert for this matter. As of now, the "conclusory allegation [within Plaintiff's] pleadings" that he has suffered "extensive physical and emotional injuries as a result of [the motor vehicle] collision," (Dkt. No. 1, Attach. 2, ¶ 5.6), does not constitute "sufficient information" to require Plaintiff to undergo a neuropsychological examination. *See Schlagenhauf,* 379 U.S. at 118–19, 85 S.Ct. 234. As such, this portion of Defendant's request is DENIED.

## C. Scope and Parameters of Examinations

As indicated beforehand, Plaintiff spends the bulk of his response urging the Court to enforce certain "limitations" and "restrictions" on any ordered medical examination. Specifically, Plaintiff first "asks that his counsel be present at the examinations." (Dkt. No. 16, at 1–2). Plaintiff next wants an audio or video recording of the examinations to ensure "the integrity of [the] procedures." (*Id.* at 1). Noting that Defendant has "failed to specify ... what kind of test or exams will be conducted during said examination[s]," Plaintiff also requests "that the Defense list the exams that will be performed by the retained expert[s] and the relevance of each exam," so that he may be "allowed sufficient time to object to tests that are not within the purview of the retained experts field of expertise or tests that are irrelevant to the case at hand." (*Id.*). He lastly seeks to have the medical examinations "be conducted in Laredo, Texas, or ... within a 100 mile radius of Laredo," and also have the Court impose a three-hour time limitation on the examinations. (*Id.* at 3).

### a. Presence of Plaintiff's Counsel

Plaintiff's first request is that his counsel is present during the medical examinations ordered. Although Rule 35 is silent on who may attend a physical or mental examination, *Tarte v. United States,* 249 F.R.D. 856, 858 (S.D.Fla.2008), such examinations, like all other forms of discovery, are subject to the general provisions of Federal Rule of Civil Procedure 26(c). *Bethel,* 192 F.R.D. at 323 (citing *Morton v. Haskell Co.,* No. 94–976–CIV–J–20, 1995 WL 819182, at *3 (M.D.Fla. Sept. 12, 1995) ("The Court ... has the discretionary authority to impose a variety of conditions which, balancing the factors in each individual case, ensure that the interests of justice are obtained."). Under that Rule 26(c), a court may issue any order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Fed.R.Civ.P. 26(c)(1). Mental examinations, by their nature, are intrusive and implicate sensitive matters. *Jansen v. Packaging Corp. of Am.,* 158 F.R.D. 409, 410 (N.D.Ill.1994). Nonetheless, the party seeking the presence of a third party at a Rule 35 examination still sustains the burden of convincing the court that good cause exists for a protective order and that such a third-party presence is necessary. *Calderon v. Reederei Claus–Peter Offen GmbH & Co.,* 258 F.R.D. 523, 526 (S.D.Fla.2009). In this context, "broad allegations of harm unsubstantiated by specific examples" does not suffice to meet the Rule 26(c) test. *Bridges,* 850 F.Supp. at 223. Rather, the inquiry becomes whether "special circumstances are present which call for a protective order tailored to the specific problems presented." *Calderon,* 258 F.R.D. at 526.

Although there have been courts which have permitted the presence of a third party at a Rule 35 examination, *Abdulwali v. Washington Metro Area Transit Auth.,* 193 F.R.D. 10, 13 (D.D.C.2000) (listing several examples), the greater weight of federal authority favors the exclusion of the plaintiff's attorney from such an exam absent special circumstances. *Id.* (amassing a number of cases excluding counsel); *Abdulwali,* 193

F.R.D. at 13 (same); *Hirschheimer v. Associated Metals & Minerals Corp.*, No. 94 CIV. 6155(JKF), 1995 WL 736901, at *3 (S.D.N.Y. Dec. 12, 1995). Third parties are generally prohibited from attending medical examinations because, in part, to allow otherwise would "subvert the purpose of Rule 35, which is to put both the plaintiff and defendant on an equal footing with regarding to evaluating the plaintiff's [medical] status." *Duncan*, 155 F.R.D. at 27 (citing *Tomlin*, 150 F.R.D. at 633). Some courts have also found that counsel or an observer "would constitute a distraction during the examination and work to diminish the accuracy of the process ... thereby compromising the results of the examination." *Calderon*, 258 F.R.D. at 527 (quoting *Romano v. II Morrow, Inc.*, 173 F.R.D. 271, 274 (D.Or.1997); *see also Bethel*, 192 F.R.D. at 324 (quoting *Shirsat v. Mut. Pharm. Co., Inc.*, 169 F.R.D. 68, 70 (E.D.Pa. 1996). Still others have noted that ethical considerations underlie the determination as to whether counsel may be present, since "[t]he presence of a lawyer creates a potential ethical problem since he becomes a possible witness and might therefore have to withdraw as trial counsel." *Hertenstein*, 189 F.R.D. at 629 (quoting *Dodd–Anderson v. Stevens*, Nos. 92–1015–MLB, 92–1016–MLB, 1993 WL 273373, at *2 (D.Kan. May 4, 1993); *see also Calderon*, 258 F.R.D. at 527 (citing several cases). Moreover, the presence of an attorney "injects a partisan character into what should otherwise be a wholly subjective inquiry." *Hertenstein*, 189 F.R.D. at 629 (quoting *Dodd–Anderson*, 1993 WL 273373, at *2); *see also Greenhorn*, 216 F.R.D. at 654 (believing that the presence of a third party "can only threaten to turn the examination into a more adversarial process than it should be."); *Ewing v. Ayres Corp.*, 129 F.R.D. 137, 138 (N.D.Miss.1989) ("[T]he independence of the Rule 35 examining physician should be preserved at all times. Any contact by counsel for either party that even gives the appearance of tainting the independence of the physician cannot be sanctioned.")

In support of his request to have counsel present, Plaintiff relies on the Fifth Circuit's holding in *Acosta* that "[t]he limitations imposed by Rule 35 do not permit a trial court to coerce a party into submitting to an examination by a vocational rehabilitation expert outside the presence of counsel." 913 F.2d at 210, (Dkt. No. 16, at 2). However, Plaintiff's reliance on *Acosta* is misplaced, as the abovementioned holding relied on *Acosta's* finding that "a vocational rehabilitation expert is not a physician under Rule 35." 913 F.2d at 209. As previously mentioned in this Order, that holding was subsequently abrogated by the amendment to Rule 35. Nonetheless, *Acosta* explicitly states that "except for interviews permitted under Rule 35, interviews are allowed only in the presence of counsel," and clearly the requested examinations in this matter will proceed under Rule 35. *Id.* at 210; *see also Rodriguez v. Pictsweet Co.*, No. B–07–113, 2008 WL 2019460, at *2 (S.D.Tex. May 9, 2008) (rejecting a similar argument put forth by that plaintiff). Plaintiff does not otherwise put forth any rationale as to why his counsel should be present at the examinations. Bearing in mind the standard just laid out, it appears that Plaintiff has failed altogether to point to "special circumstances" warranting his counsel's presence. As such, Plaintiff's counsel shall not be permitted to attend either of the examinations here ordered, absent agreement by Defendant and the examining physician.[2]

#### b. Audio or Video Recording of the Examinations

Plaintiff next asks the Court to mandate either an audio or video recording of his examinations, thereby recognizing "the Plaintiff's right to preserve evidence of the nature of the examination, the accuracy of the examiner's notes or recollections[,] and the tones of voice." (Dkt. No. 16, at 3). Most courts analyze a request for a recording device the same way they evaluate whether to permit the presence of an attor-

---

**2.** The Court includes this provision merely because Defendant did not file a reply addressing any of the proposed parameters put forth by Plaintiff. Although certain parameters may not be ordered by the Court, this does not preclude all parties involved from agreeing to such parameters.

ney during a Rule 35 examination. *Calderon*, 258 F.R.D. at 529; *In re Falcon Workover*, No. Civ.A. 972628, 1999 WL 721945, at *1 (E.D.La. Sept. 15, 1999) ("[T]aping the psychiatric examination would be tantamount to allowing counsel for the claimant to be present in the room."); *Hertenstein*, 189 F.R.D. at 628 ("Whether to either allow a . . . recorder or a third person at the examination of plaintiff raises only a single issue."). Because "[t]he introduction of a human or mechanical presence—whether a lawyer, a stenographer, a tape recorder, or other instrumentality—changes the nature of the proceeding," the court must be convinced that a protective order is necessary. *Tirado v. Erosa*, 158 F.R.D. 294, 299 (S.D.N.Y.1994). Thus, in the same way third-party observations are disfavored, so too are the presence of recording devices, *Newman v. San Joaquin Delta Cmty. Coll. Dist.*, 272 F.R.D. 505, 514 (E.D.Cal.2011); *Holland v. U.S.*, 182 F.R.D. 493, 495 (D.S.C.1998), and therefore the party seeking to record or videotape an examination bears the burden of showing a "factual basis" amounting to good cause for the request. *Maldonado v. Union Pac. R.R. Co.*, No. 09–1187–EFM, 2011 WL 841432, at *3 n. 15 (D.Kan. Mar. 8, 2011); *Calderon*, 258 F.R.D. at 529. In other words, "special circumstances" for the request must be shown, as fairness and medical integrity considerations underlie the determination. *Newman*, 272 F.R.D. at 514–15; *Hirschheimer*, 1995 WL 736901, at *4.

 None of the "special circumstances" that other courts have deemed sufficient for requiring a video or audio recording are seemingly present in this case. *See Schaeffer v. Sequoyah Trading & Transp.*, 273 F.R.D. 662, 664 (D.Kan.2011) (among other reasons, because "plaintiff ha[d] a lengthy history of serious mental issues," the court had serious doubts "as to whether plaintiff [would] be capable of providing any assistance to his attorney in understanding what took place during the examination."); *Maldonado*, 2011 WL 841432, at *3 (relying on the fact that the plaintiff, who "ha[d] a third-grade education and [wa]s a non-English speaker," suffered from impaired memory and cognitive abilities, "thus impairing his ability to communicate to his counsel what

occurred during the examination," in finding the recording warranted); *T.B. ex rel. G.B. v. Chico Unified School Dist.*, No. CIV S–07–0926–GEB–CMK, 2009 WL 837468, at *2 (allowing the recording upon examining physician's request because of his representation that "with traumatized children, a child's facial expressions, body language, movements and behavioral enactments communicate medically significant information which can be captured on videotape") (internal quotation marks omitted); *Greenhorn*, 216 F.R.D. at 654 (concluding a recording was necessary because of evidence brought forth by the plaintiff that the examining physician was "abusive and ha[d] a 'predilection for ignoring court orders imposing conditions upon his examinations'" and had thus been disqualified from several cases previously). In fact, Plaintiff has failed to proffer any "special circumstances" unique to his situation which would justify a court order requiring that the examinations be recorded. Thus, the Court declines to impose such a requirement.

### c. Scope of the Examinations

Another issue addressed by Plaintiff's response to Defendant's motion is that Defendant has offered no evidence to either Plaintiff or the Court regarding "what kind of test or exams will be conducted during said examination[s]." (Dkt. No. 16, at 1). Plaintiff therefore requests that Defendant "list the exams that will be performed by the retained expert and the relevance of each exam," so that Plaintiff may either "stipulate to [those] tests that are relevant and within the scope of the retained experts['] field of expertise," or "object to tests that are not within the purview of the retained experts['] field of expertise or tests that are irrelevant to the case at hand." (*Id.* at 2).

Federal Rule of Civil Procedure 35 requires that a court order directing that a physical or mental examination occur "specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R.Civ.P. 35(a)(2)(B). "Strictly construed, this provision would require the court to specify the listed details in its order granting

a motion for examination." *Hertenstein,* 189 F.R.D. at 623 (internal quotation marks omitted). Parties seeking a court-ordered mental or physical examination should therefore provide the necessary details to the court, or they otherwise risk denial of their motions solely on the grounds that the court cannot comply with this provision of the Rule. *Id.; see, e.g., Woods v. Century I, L.C.,* Civ. A. No. 92–2092–JWL, 1993 WL 33339, at *1 (D.Kan. Jan. 11, 1993) (finding that the court could not "grant [the] motion without the additional information required by Rule 35," solely because, beyond the examining physician's name, "[n]o other information was given."); *Hirschheimer,* 1995 WL 736901, at *4 (limiting the testing to "the one test" specifically identified, because to require the plaintiff "to undergo unidentified testing would deprive him of the opportunity to seek an order precluding those tests that may be irrelevant"). However, most courts have found that the failure to provide the requisite particulars regarding the examination does not necessitate denial of a motion proceeding under Rule 35. *Calderon,* 258 F.R.D. at 526 (quoting *Hertenstein,* 189 F.R.D. at 623). Instead, a court may grant a request for examination subject to it issuing a further order specifying the details, or subject to a mandate that the parties confer regarding the specifics. *Id.* (citing *Hertenstein,* 189 F.R.D. at 623); *see also Schaeffer,* 273 F.R.D. at 664–65 (ordering the parties to confer regarding the examination "and submit a brief report to the court concerning the necessary arrangements for the examination."); *Kador v. City of New Roads,* No. 07–682–D–M2, 2010 WL 2133889, at *3–4 (M.D.La. May 27, 2010) (directing the parties to consult over "the necessary details" and instructing the defendant to then submit *to plaintiff* a revised Rule 35 request with those details).

■■■ Here, although Defendant has adequately apprised the Court of the "person or persons" to perform the examinations,[3] as well as the "time and place" for such examinations, Defendant has failed altogether to delineate those tests or potential "universe of tests" that each examining physician intends to perform. *See Kador,* 2010 WL 2133889, at *3–4 (finding that a proper examination request contains details "concerning the … manner, conditions, and scope, including the areas into which [the physician] will inquire, … whether any radiologic or other testing will be performed (and if so, the nature and extent of such testing), the length of time the examination will last, and the identities and qualifications of others who will be present for the examination."). Although this Court does not intend to "intervene and limit the type of examination[s] an expert [indicates] is necessary" to adequately determine the nature and extent of Plaintiff's injuries, as such intervention "would subvert the truth finding [sic] function inherent in Rule 35 examinations," *Abdulwali,* 193 F.R.D. at 15; *Lahr,* 164 F.R.D. at 202, Plaintiff is nonetheless entitled to a certain degree of direction regarding those examinations, thereby providing him the opportunity to bring to the Court's attention those tests he deems irrelevant or harmful. *See Newman,* 272 F.R.D. at 512 (acknowledging that "the court is not a medical professional," and thus refusing to limit the proposed testing "absent a showing of danger or actual harm"). Although some courts find it appropriate to generically order "routine procedures" be performed, *Calderon,* 258 F.R.D. at 529 (citing *Tarte,* 249 F.R.D. at 860); *see also Doe v. D.C.,* 229 F.R.D. 24, 28 (D.D.C.2005) (although the "defendant [ ] failed to indicate what tests or assessments [would] be administered," leaving it to "the expertise and judgment of the professional charged with conducting the examination" to determine how the examination would be administered); *Nyfield v. Virgin Islands Tel. Corp.,* No. Civ.1999/202, 2001 WL 378858, at *3 (D.Vi. Apr. 17, 2001) (broadly allowing "procedures and testing relevant to [p]laintiff's assertion that his damages include mental anguish, pain and suffering, and loss of enjoyment of life including future damage therefrom."), this Court feels it more appropriate to order Defendant to submit to Plaintiff a list of those

---

**3.** Defendant has submitted the proposed physicians' extensive curriculum vitae. (*See* Dkt. No. 15, Attach. 1, at 5–40). There seems to be no issue that the proposed examiners are "suitably licensed or certified." Fed.R.Civ.P. 35(a)(1); *see also Newman,* 272 F.R.D. at 511.

"potential tests that will comprise the universe of tests" that the examining physicians intend to conduct. *Newman*, 272 F.R.D. at 512; *see also Ragge*, 165 F.R.D. at 609 (because the examiner's declaration set forth "the nature of the examination to be conducted, including the types of psychological testing he may choose to administer," finding it unnecessary for him to "select, and disclose, the specific tests to be administered," since "some preference should be given to allowing the examiner to exercise discretion in the manner and means by which the examination is conducted"). Defendant shall also indicate to Plaintiff the scope of any interviews that are to be conduct.[4]

### d. Duration of the Examinations

As indicated by Plaintiff, Defendant's motion also "fail[s] to specify how long the examination[s] will take," and thus Plaintiff requests that the examinations "not exceed three hours."[5] (Dkt. No. 16, at 1, 3). "Rule 35 ... has been described as a 'powerful instrument for ascertaining the truth,'" *Lahr*, 164 F.R.D. at 202 (quoting *In re Certain Asbestos Cases*, 112 F.R.D. 427, 433 (N.D.Tex.1986)), and courts sometimes refuse to impose time restrictions on Rule 35 examinations for fear that an arbitrary timeline will interfere with the Rule's purpose. *Mandujano v. Geithner*, No. C 10–01226 LB, 2011 WL 825728, at *5 (N.D.Cal. Mar. 7, 2011) (citing *Nicholas v. Wyndham Intern., Inc.*, 218 F.R.D. 122, 124 (D.Vi.2003)). Courts have permitted drastically varying durations for these examinations, extending from three hours to fourteen. *Compare Mandujano*, 2011 WL 825728, at *5 (allowing fourteen hours over two days), *and Newman*, 272 F.R.D. at 513 (granting ten hours of testing over two days), *with Hirschheimer*, 1995 WL 736901, at *4 (considering six hours of exami-

nation to be "excessive," and thus limiting the examination to three hours). However, this Court does not have any guidance from Defendant or its experts regarding the expected length of the examinations, and is therefore wary imposing the arbitrary three-hour time limits requested "particularly given the seriousness and extensiveness of the injuries allegedly sustained" by Plaintiff. *Greenhorn*, 216 F.R.D. at 653. The Court trusts that that the examining specialists in this case "will conduct [their] examination[s] in the time reasonably needed to assess Plaintiff's physical condition in order to render an expert ... opinion," *Calderon*, 258 F.R.D. at 529, bearing in mind their "professional and ethical duties." *Newman*, 272 F.R.D. at 513. When Defendant supplies the requisite details to Plaintiff regarding the scope of the examinations, Defendant shall also indicate the expected duration of the respective examinations.

### e. Place of the Examinations

The last issue the Court must address is the place of examination. Plaintiff seeks to have the examinations conducted in Laredo, Texas, or "within a 100 mile radius of Laredo." (Dkt. No. 16, at 3). The Court first notes that, in its motion, Defendant "propose[d] that Plaintiff's medical examination be held ... [with] Dr. Goldsmith in McAllen, Texas, or at another mutually agreeable time and place," and that the examination with Mr. Quintanilla "be held ... at a mutually agreeable location in Laredo, Texas, or at another mutually agreeable time and place."[6] (Dkt. No. 15, ¶¶ 10–11).

The general rule is that a plaintiff who brings suit in a particular forum may not avoid appearing for an examination in

---

4. The Court realizes that "[a]ll of the questions that a medical doctor needs to ask, in particular the follow-up questions, cannot be determined in advance of the medical examination," and thus Defendant need only furnish to Plaintiff the general scope of such questioning. *Calderon*, 258 F.R.D. at 528; *Hertenstein*, 189 F.R.D. at 626 ("Prior disclosure of questions to be asked is unworkable.") (internal quotation marks omitted) (citing *Tomlin*, 150 F.R.D. at 631 n. 1).

5. Although unclear from Plaintiff's language, the Court presumes that Plaintiff intends that *each* proposed examination be limited to three hours.

6. The proposed examination with Dr. Perez was also to take place in Laredo, Texas; however, as indicated above, Defendant has not shown that Plaintiff's mental condition is "in controversy," and thus the Court does not address that examination in this section.

that forum.[7] *McDonald,* 2008 WL 2705557, at *6 (quoting another source); *see also Page v. Hertz Corp.,* No. CIV. 09–5098, 2011 WL 5553489, at *6 (D.S.D. Nov. 15, 2011) (citing *McCloskey v. United Parcel Serv. Gen. Servs. Co.,* 171 F.R.D. 268, 270 (D.Or.1997)). In the case of physical or mental examinations, this rule ensures that the examining specialist is available as an expert witness at trial. *McDonald,* 2008 WL 2705557, at *6. Logic also dictates such a result, because the facilities and equipment an examiner needs are likely at his place of practice. "For an exception to be made [to this general rule], the burden is not on the defendant to demonstrate that a satisfactory examination cannot be had a nearer locale to the plaintiff, but rather on the plaintiff to show that traveling to the examination poses undue burden or hardship." *Id.*

▐ Here, while McAllen, Texas is located more than 100 miles from Laredo, it is nonetheless within the Southern District of Texas. Plaintiff has not provided the Court with any rationale as to why travel to such a locale would pose an "undue burden or hardship," and thus the Court feels it reasonable to require Plaintiff to travel to Dr. Goldsmith in McAllen. The parties are free to agree otherwise, as Defendant has clearly indicated it would consider scheduling such an examination at "another mutually agreeable time and place." The location proposed by Defendant for the examination with Mr. Quintanilla is Laredo, and thus is a non-issue as it relates to Plaintiff's request.

## II. CONCLUSION

In summation, "Defendant's Motion to Examine Plaintiff" is GRANTED IN PART and DENIED IN PART. Plaintiff is ORDERED to submit to examinations with Dr. Goldsmith and Mr. Quintanilla. Defendant's motion regarding the request for Plaintiff to undergo a neuropsychological examination with Dr. Perez is DENIED; Defendant may renew its motion regarding an examination with Dr. Perez, but must set forth the requisite showing. Further, because the Court notes that

the proposed examination date with Mr. Goldsmith has passed, the parties are to confer amongst themselves and decide on "a mutually agreeable" date and time for that examination. Defendant is ORDERED to provide the required information regarding the scope and duration of each of the ordered examinations at least one week prior to the scheduled examination. This will ensure that Plaintiff has a proper opportunity to object to any potential harmful or extraneous testing. The Court will rule on any potential motions brought by Plaintiff within that week, so as to ensure the examinations proceed on schedule.

Further, Defendant has also filed an interrelated "Motion to Extend Time to Designate Expert Witnesses and Produce Expert Reports," (Dkt. No. 12), filed February 20, 2013. The current deadline for Defendant to designate expert witnesses and reports is February 22, 2013, and the discovery deadline is set at April 8, 2013. In its motion, Defendant requested a deadline of March 8, 2013 "to designate its expert witnesses and serve its expert reports." (*Id.* ¶ 5). During a scheduled status conference, held February 21, 2013, Defendant informed the Court that his reason for requesting an extension of time was that Plaintiff was not making himself "available for personal examination and evaluation by Defendant's experts." (*Id.* ¶ 4). Plaintiff indicated during the status conference that he "adamantly oppose[s] an independent medical examination." (Feb. 21st Status Conf. at 11:38 a.m.). Defendant therefore filed the instant "Motion to Examine Plaintiff."

Because the Court has granted in part Defendant's motion, the Court must issue new deadlines to accommodate such a ruling. "Defendant's Motion to Extend Time to Designate Expert Witnesses and Produce Expert Reports" is therefore GRANTED. The new deadline for Defendant to designate its experts and issue those reports is April 30, 2013. Although neither party has requested it as of yet, it seems sensible for the Court to extend the discovery deadline to May 30,

---

7. The rule is not changed by the fact that a plaintiff may have selected the forum by necessi- ty. *McDonald,* 2008 WL 2705557, at *6.

2013 in order to accommodate the upcoming medical examinations.

IT IS SO ORDERED.