Opinion issued August 29, 2025



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-25-00045-CV

———————————

## IN RE AMERICA'S CATCH INC., AMERICA'S CATCH CATFISH FARMS INC., AND WARREN PERNELL, Relators

---

### Original Proceeding on Petition for Writ of Mandamus

---

### MEMORANDUM OPINION

Relators America's Catch Inc., America's Catch Catfish Farms Inc., and Warren Pernell filed a petition for writ of mandamus challenging the trial court's January 8, 2025 order granting relators' motion to compel a neuropsychological examination of the real party in interest/plaintiff Teresa Fisher, but ordering the examination to be audio and video recorded and setting the location of the examination in Knoxville, Tennessee. Relators also challenge the trial court's

failure to grant relators' motion to continue the trial to permit relators to depose Fisher. Relators filed an emergency motion, which the Court granted, staying all trial court proceedings. We conditionally grant the petition in part and deny it in part.[1]

## Background

This case arises from a personal injury lawsuit filed by real party in interest Teresa Fisher for injuries allegedly resulting from a collision between Fisher's vehicle and a commercial motor vehicle owned by relators, America's Catch Inc. and America's Catch Catfish Farms Inc., and driven by relator Warren Pernell. Fisher alleged that she had sustained physical injuries, cognitive impairment, and psychological injuries.

Relators noticed the deposition of Fisher, but Fisher filed a motion for protection, which relators opposed. Relators further sought to conduct an independent medical exam ("IME"), and when Fisher refused, relators filed a motion to compel an IME by their expert, Dr. Corwin Boake, Ph.D., a board-certified clinical neuropsychologist. Fisher opposed the motion to compel and asserted that deposing either Dr. David Feltoon, who had conducted a zoom examination of

---

[1] The underlying case is *Teresa Fisher v. America's Catch, Inc., America's Catch Catfish Farms, Inc., and Warren Pernell*, cause number 2022-00067, pending in the 281st District Court of Harris County, Texas, the Honorable Christine Weems presiding.

2

Fisher, or Fisher's treating physicians should be sufficient. At a May 2024 hearing, relators explained that their expert, Dr. Boake, had interviewed Fisher with the trial court's permission and concluded that she could be deposed and could be given a full neuropsychological IME.

Fisher's counsel requested recording of the IME, which relators opposed because none of her prior evaluations were recorded and because Dr. Boake had stated that recording was inconsistent with acceptable practices for a neuropsychological evaluation. The trial court stated that recording would be allowed but that if Dr. Boake had evidence that recording somehow impacted the testing, the court would consider that then. The trial court also stated that it would not rule concerning Fisher's deposition because the purpose of permitting the IME was to see if Fisher was fit to be deposed. The trial court asked relators' counsel to ask Dr. Boake if he had any issue with conducting the IME in Fisher's hometown and relators' counsel stated they would need to consult with Dr. Boake. Dr. Boake did oppose locating the exam in Tennessee because he was not licensed there and relators argued that they were entitled to the expert of their choice.

Another hearing was held and the trial court orally granted the motion to compel, stating that the IME would occur in Tennessee and be recorded. Both parties filed proposed orders with specific conditions and limitations. The trial court did not sign either proposed order until approximately six months later, on January

3

8, 2025, in which it ordered the IME to occur in Knoxville, Tennessee, to last no longer than eight hours, and to be videotaped and audio recorded.

### Delay in Seeking Relief

Before addressing the merits of relators' petition, we turn first to Fisher's complaint in her response to the petition that relators failed to proceed with the IME after the trial court granted it on the record during the June 5, 2024 hearing, and that relators are using this mandamus as a basis for delaying the trial. Fisher does not argue waiver and does not cite to any case law.

The Texas Supreme Court has stated that "[e]quity aids the diligent and not those who slumber on their rights." *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993). Thus, a relator who unreasonably delays seeking mandamus relief may waive its right to such relief if the delay is unjustified. *See In re Am. Airlines, Inc.*, 634 S.W.3d 38, 43 (Tex. 2021) (orig. proceeding). If a delay does not result from the relator's own actions, and the relator was working to move the case along, this type of delay does not result in forfeiture of the right to mandamus relief. *See id.*

Rule 204 requires that an order for an independent physical or mental examination must be in writing. *See* Tex. R. Civ. P. 204.1(d). The order must also "specify the time, place, manner, conditions, and scope of the examination . . . . *Id.*

4

Here, the trial court orally ruled on the record during the June 5th hearing, but the trial court made only a preparatory and general ruling: "The Court is going to require the neuropsych examination to be in Tennessee. The Court is going to require the entire thing to be recorded." This oral order contained no specifics concerning the IME, such as location, length of examination, or conditions. Thus, this order did not comply with the requirements of Rule 204.1.

On June 25, 2024, relators filed a request for modification of the trial court's oral order and supplemented their motion to compel, asking the trial court to order the IME to be conducted in Houston, and for only portions of it to be videotaped. No order containing specifics was signed until January 8, 2025, and in that order the trial court ordered the test to be conducted in Knoxville, Tennessee, to last no more than eight hours, with the entire IME video and audio recorded. This petition for writ of mandamus was filed on January 17, 2025. Accordingly, relators did not delay unreasonably in seeking relief.

**Motion to Strike Real Party in Interest's Mandamus Record Items 1–3 and 5**

When Fisher filed her response to the petition, she included a sworn mandamus record containing six tabs of documents. Relators filed a motion to strike most of Fisher's mandamus record on the ground that the documents were not before the trial court when it decided the relator's motion to compel. Fisher opposes this motion.

We may not consider exhibits that were not part of the trial court record at the time the trial court heard and ruled on the motion that is the subject of a mandamus proceeding. *In re Liberty Cty. Mut. Ins. Co.*, 606 S.W.3d 866, 874 (Tex. App.—Houston [14th Dist.] 2020, orig. proceeding). Documents do not have to be attached to specific motions or responses to be "before the court." *See, e.g., Lance v. Robinson*, 543 S.W.3d 723, 733 & n.8 (Tex. 2018) (documents offered or filed before ruling in question were "'on file with the court' and thus properly 'before the trial court for the purposes of the hearing on the motion . . . .'"). A review of the record reveals that some of these documents were in the record and therefore, we grant in part and deny in part relators' motion to strike.

Tab 1 in Fisher's sworn record is Dr. Feltoon's report from his zoom interview of Fisher. Tab 3 contains medical documentation from Dr. Hector Miranda-Grajales of Medical Injury and Rehabilitation Specialists, in Austin, Texas. Dr. Miranda-Grajales conducted an examination of Fisher. Relators argue that the documents in Tabs 1 and 3 were not before the trial court when it held the hearing or ruled on the motion to compel the IME. Fisher's explanation indicates that these documents were presented in connection with a hearing on a different motion:

> On June 5, 2024, before the July 2, 2024 hearing on the trial court's order made the basis of this Mandamus, the trial court heard, and ruled on, Defendant's Motion to Exclude the Testimony of Dean Nance. (MR 672-700). In the expert designation that Relator[s] attached to their Motion to Strike Dean Nance, Dr. Hector Miranda and Dr. David

6

Feltoon were fully disclosed. Included in Dr. Feltoon's designation was a statement that his report, which is the exhibit contained in Tab 1 of Plaintiff's Mandamus Record, was incorporated into his designation. (MR 332). Likewise, Dr. Miranda's deposition contains a statement that the medical records generated by Medical Injury Rehabilitation Specialists, which make up the exhibit contained in Tab 3 of Plaintiff's Mandamus Record, were incorporated into his designation.

The citations within this quoted response are to Tab 2 of Fisher's sworn record, also objected to by relators.

Fisher does not state where in the record she submitted Dr. Feltoon's report to the trial court or where the trial court specifically considered this report. Fisher cites to the June 5 hearing, but cites to pages 791–833, which is the entire transcript of that hearing. A review of that hearing reveals no mention of Dr. Feltoon's report other than statements in Dr. Feltoon's affidavit attached to Fisher's supplemental response to the motion to compel.

Although there is no mention of this report during the hearing, the trial court ruled on the motion to compel during the same hearing in which it addressed the motion to strike Nance. Dr. Feltoon's report was attached to the motion to strike, and thus, was in the trial court's file. Although the report was not attached to the motion to compel or responses to the motion to compel, the report was in the trial court file when it ordered recording and ordered the IME to occur in Tennessee. Thus, we deny the motion to strike as it concerns documents in Tab 1.

As for Dr. Miranda-Grajales's documentation in Tab 3, Fisher defends this documentation on the ground that Dr. Miranda-Grajales had been disclosed as a treating physician and listed in Fisher's Fifth Amended Disclosures and Expert Witness Designations as a retained expert witness and thus, his records were incorporated into this disclosure. But Fisher's Fifth Amended Disclosures describes what Fisher expects Dr. Miranda-Grajales to testify about and does not state that Dr. Miranda-Grajales's records are included or incorporated into this document. Thus, Fisher has not shown that the records in Tab 3 were before the trial court when it ruled on the motion to compel, and we grant the motion to strike as to the documents in Tab 3.

Tab 2 is Plaintiff's Fifth Amended Rule 194 Disclosures-Experts. In her response to relators' motion to strike, Fisher asserts that this exhibit was filed in response to relators' motion to strike, exclude or limit the testimony of her retained expert, Roger K. Allen, which was filed on June 3, 2024. Fisher does not explain how this exhibit related to the motion to compel but it has a file stamp and was on file and before the trial court when it ruled on the motion to compel. Accordingly, we deny the motion to strike the documents in Tab 2.

Finally, relators seek to strike the documents in Tab 5 of the sworn record, which includes Fisher's Sixth Supplemental Disclosures and Expert Witness Designations. This document contains no file stamp, and there is no evidence that

8

it was before the trial court when it ruled on the motion to compel. Fisher claims that relators put this document before the trial court by attaching it to their motion to strike Nance, but this motion to strike is not in the mandamus record, and thus, Fisher has not established that this document was before the trial court when it ruled on relators' motion to compel. Accordingly, we grant the motion to strike the document in Tab 5.

## Standard of Review

To show entitlement to mandamus relief, a relator must show that the trial court abused its discretion and that there is no adequate remedy by appeal. *See Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004). To establish that the trial court abused its discretion, relator must show that the trial court reached "a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). As to the resolution of factual issues or matters committed to the trial court's discretion, we may not substitute our judgment for the trial court's unless relator establishes that the trial court could reasonably have reached only one decision. *Id.* at 840.

## Analysis

Relators challenge the trial court's order granting Fisher's request for video and audio recording of the IME, the requirement that the IME occur in Knoxville,

Tennessee, and the trial court's failure to permit relators to depose Fisher before the IME.

Texas Rule of Civil Procedure 204 sets out the procedures for court-ordered physical and mental examinations. *See* TEX. R. CIV. P. 204.1. No later than thirty days before the end of the applicable discovery period, a party may move to compel another party to submit to an examination by a qualified physician. *See* TEX. R. CIV. P. 204.1(a)(1). To obtain an examination, the party must show both good cause and either that the party's mental or physical condition is in controversy or the party responding to the motion designated a psychologist as a testifying expert or disclosed a psychologist's records for possible use at trial. *See id.* 204.1(c); *In re Soc'y of Our Lady of Most Holy Trinity*, 622 S.W.3d 1, 11 (Tex. App.—Corpus Christi-Edinburgh 2019, orig. proceeding).

Rule 204 requires the trial court to specify "the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made." TEX. R. CIV. P. 204.1(d). In doing so, the trial court "may issue protective orders 'in the interest of justice' and may order, inter alia, that 'discovery be undertaken only by such method or upon such terms and conditions' as directed by the court." *Soc'y*, 622 S.W.3d at 12 (quoting TEX. R. CIV. P. 192.6(b)).

**1. Audio and video recording of independent mental examination**

10

Relators first contend that the trial court placed an unreasonable limitation on the IME by requiring that it be audio and video recorded. Relators observe that, although a trial court may place conditions on an examination, the limitations and conditions the trial court imposes must be reasonable. *See In re Kirby Inland Marine, LP*, No. 01-18-00383-CV, 2018 WL 3468476, at *2–3 (Tex. App.—Houston [1st Dist.] July 18, 2018, orig. proceeding) (mem. op.).

The first Texas appellate court to address the recording of an IME acknowledged a lack of Texas cases on the subject and reviewed federal courts' construction of analogous Federal Rule of Civil Procedure 35. *See Soc'y*, 622 S.W.3d at 12 (citing FED. R. CIV. P. 35). The court noted that a majority of federal courts reject "the notion that a third party should be allowed, even indirectly through a recording device, to observe a Rule 35 examination." *Id.* at 13. The reason for this rejection is that an "observer, court reporter, or recording device would constitute a distraction during the examination and work to diminish the accuracy of the process . . . . [and] interjects an adversarial, partisan atmosphere into what should be otherwise a wholly objective inquiry . . . ." *Romano v. II Morrow Inc.*, 173 F.R.D. 271, 274 (D. Or. 1997). Thus, a party requesting recording has "the burden to show a factual basis establishing special circumstances which constitute good cause for the accommodation." *Soc'y*, 622 S.W.3d at 14 (citing *Ornelas v. S. Tire Mart, LLC*, 292 F.R.D. 388, 396 (S.D. Tex. 2013)).

11

Requiring the party seeking recording to show special circumstances or a particularized need is consistent with the federal courts' and the Texas Supreme Court's emphasis on the importance of giving the moving party's expert "the 'same opportunity' as the opposing party's expert 'to fully develop and present [his or her] opinion, ensuring a fair trial.'" *Soc'y*, 622 S.W.3d at 17 (quoting *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 304–05 (Tex. 2016) (orig. proceeding)). Good cause is determined on a "case-by-case basis according to evidence showing a particularized need, rather than by a categorical determination based on the underlying tort or cause of action or the nature of the injury alleged." *Soc'y*, 622 S.W.3d at 18. "Courts have also reasoned that a recording undermines [Federal] Rule 35 because it gives the plaintiff an evidentiary tool unavailable to the defendant and thus thwarts the rule's attempt to place parties 'on a somewhat equal footing' in their efforts to appraise the plaintiff's condition." *Reece v. Rubbermaid, Inc.*, No. CV. 08-0051-PK, 2009 WL 10693911, at *2 (D. Or. Mar. 19, 2009).

"[M]ost [federal] courts begin with a presumption against the presence of third persons, and then go on to consider whether special circumstances have been demonstrated in a particular case." *Baba-Ali v. City of New York*, No. 92CIV.7957(DAB)(THK), 1995 WL 753904, at *2 (S.D.N.Y. Dec. 19, 1995). This court and other Texas courts have applied the requirement of a showing of special circumstances or a particularized need for recording an IME. *See In re UV Logistics*,

12

682 S.W.3d 612, 624 (Tex. App.—Houston [1st Dist.] 2023, orig. proceeding); *Soc'y*, 622 S.W.3d at 14; *In re Redbird Trails Apts.*, No. 05-20-00284-CV, 2020 WL 3445811, at *4 (Tex. App.—Dallas June 24, 2020, orig. proceeding) (mem. op.). "Special circumstances" supporting the recording of an independent medical exam have been found where the examinee is a minor,[2] the examinee does not speak the language or suffers from a disability that might impair his or her ability to communicate with counsel what occurred during testing,[3] or when evidence suggests recording would be advisable.[4] *See UV Logistics*, 682 S.W.3d at 624. These examples reflect the view that a trial court should not permit recording of a mental

---

[2] *See, e.g., T.B. ex rel. G.B. v. Chico Unified Sch. Dist.*, No. CIV S-07-0926-GEB-CMK, 2009 WL 837468, at *2 (E.D. Cal. Mar. 26, 2009) (permitting recording of examination of autistic child because "with traumatized children, a child's facial expressions, body language, movements and behavioral enactments communicate medically significant information which can be captured on videotape, and video camera was small and placed in stationary location).

[3] *See Maldonado v. Union Pac. R.R. Co.*, No. 09-1187-EFM, 2011 WL 841432, at *3 (D. Kan. Mar. 8, 2011) (allowing recording of examination when plaintiff had third-grade education and was non-English speaker and evidence showed plaintiff suffered impaired memory and cognitive abilities hampering ability to communicate with counsel about examination); *Di Bari v. Incaica Cia Armadora, S.A.*, 126 F.R.D. 12, 14 (E.D.N.Y. 1989) (permitting presence of stenographer at psychiatric examination because plaintiff was not fluent in English and would have difficulty communicating with counsel about examination).

[4] *See, e.g., Greenhorn v. Marriott Int'l, Inc.*, 216 F.R.D. 649, 654 (D. Kan. 2003) (allowing recording of examination based on evidence presented by plaintiff that physician was abusive, had been disqualified from several cases, and had predilection for ignoring court ordered conditions on his examinations).

or physical exam unless the party seeking to record the exam proves "special circumstances, unique to that party's situation, supported by specific facts" distinguishing that party from others who seek recording. *See Soc'y*, 622 S.W.3d at 14; *see also UV Logistics,* 682 S.W.3d at 623–24 (discussing cases in which special circumstances have been shown).

Fisher interprets *UV Logistics* to reject the argument that recording interferes with the testing process, but that is inaccurate. The Court noted that a majority of federal courts reject recording based on the fact that the presence of a third party or recording can be distracting and potentially invalidate test results, which is why the federal courts require proof of special circumstances justifying the intrusion. *See, e.g., UV Logistics*, 682 S.W.3d at 619 (citing *Ornelas*, 292 F.R.D. at 273–74). Moreover, federal courts hold that recording or allowing third parties to attend examinations "subvert[s] the purpose of Rule 35, which is to put both the plaintiff and defendant on an equal footing with regarding to evaluating the plaintiff's mental status." *See, e.g., Duncan v. The Upjohn Co.*, 155 F.R.D. 23, 27 (D. Conn. March 9, 1994).

The Texas Supreme Court has held that the federal courts' construction of analogous federal Rule 35 is helpful in analyzing Texas Rule of Civil Procedure 167a (now Rule 204.1). *See Coates v. Whittington*, 758 S.W.2d 749, 751 (Tex. 1988). Similarly, the federal court's construction of Rule 35 as it concerns recording

14

of a medical or psychological examination is helpful in analyzing the issues involved in requests for the presence of a third party or recording device during an IME "because '[t]he introduction of a human or mechanical presence—whether a lawyer, a stenographer, a tape recorder, or other instrumentality—changes the nature of the proceeding.'" *Soc'y*, 622 S.W.3d at 13 (quoting *Ornelas*, 292 F.R.D. at 397. And the presence of a recording device or observer "subverts the purpose of the rule allowing examinations, which is to put the plaintiff and the defendant on an equal footing regarding the evaluation of the party's medical or psychological status." *See Soc'y*, 622 S.W.3d at 13 (citing *Tarte v. U.S.*, 249 F.R.D. 856, 859 (S.C. Fla. 2008)). Based on this purpose, if a party has been examined by his or her physicians without observers or recording, the other party should have the same opportunity. *See Soc'y*, 622 S.W.3d at 17; *In re AJM Constr. Co., Inc.*, No. 01-25-00283-CV, 2025 WL 2446355, at *5 (Tex. App.—Houston [1st Dist.] Aug. 26, 2025, orig. proceeding) (mem. op.).

As the neuropsychologist in *UV Logistics* argued, relators argue here that recording violates neuropsychology guidelines and would render the results of the IME unreliable. *See* 682 S.W.3d at 625. Consistent with the federal authority addressing the concerns with recording and IME, the *UV Logistics* court addressed whether the plaintiff had shown special circumstances or a particularized need for recording and found that the real parties had shown that they suffered from deficits

15

that could affect their ability to recall the testing and to discuss it later with their attorneys. *See id.* at 623–27. Although recording of the IME can cause a distraction, possibly compromising testing results and subverting the equal-footing purpose of Rule 204.1, we may uphold a trial court's order for recording if the real party met the burden of proving special circumstances justifying the intrusion. *See Soc'y*, 622 S.W.3d at 13–14.

Merely stating that an individual has a traumatic brain injury is not sufficient to establish special circumstances or a particularized need for recording. *See AJM Constr. Co., Inc.*, 2025 WL 2446355, at *7 (holding insufficient plaintiff's proof of special circumstances where proof consisted of statements he would be unable to communicate with counsel regarding IME because he "suffers from significant cognitive deficits and memory issues" and physician's testimony plaintiff sustained traumatic brain injury resulting in memory problems); *Soc'y*, 622 S.W.3d at 18 (courts determine good cause for allowing videotaping of examinations on a case-by-case basis showing particularized need not based on "the nature of the injury alleged"). In *UV Logistics*, the real parties presented a physician's report setting out test results establishing significant deficits that could affect the real parties' ability to discuss the IME with counsel, including "'significant neuropsychological impairments' with deficits . . . 'making it difficult for [one real party] to recall specifics of information heard when the information is unrelated." 682 S.W.3d at

16

626. Other real parties' medical reports showed forgetfulness, deficits in complex attention and auditory information processing speed, cognitive function, language, verbal fluency, visual recognition memory, and short-term memory problems that could affect the recall of specific information if unrelated. *Id.* at 626–27; *see also Schaeffer v. Sequoyah Trading & Transp.*, 273 F.R.D. 662, 664 (D. Kan. 2011) (holding that special circumstances had been established that would render plaintiff unable to communicate with counsel and which supported recording of IME based on parties' agreement that plaintiff had lengthy history of serious mental illness and institutionalization, and deposition transcripts revealed plaintiff's difficulty remembering everyday events and interactions with medical providers); *Maldonado v. Union Pac. R.R. Co.*, No. 09-1187-EFM, 2011 WL 841432, at * 3 (D. Kan. Mar. 8, 2011) (finding no abuse of discretion in permitting recording of IME where plaintiff was non-English speaker with third-grade education and expert reports indicated plaintiff had memory and cognitive impairments).

None of the "special circumstances" this or other courts have deemed sufficient to support the requirement of video or audio recording are present here. To support the recording of the IME, Fisher initially presented to the trial court the affidavit of Dr. Feltoon, the declaration of Dr. Miranda-Grajales, the declaration of Jon DeFrance, Ph.D., a second affidavit by Dr. Feltoon, an excerpt from the deposition of relator's expert Dr. Boake, an excerpt allegedly from a report by Dr.

17

Miranda-Grajales, and an excerpt of a record from the Patricia Neal Outpatient Center.

Dr. Feltoon stated in his March 22, 2024 affidavit that he had examined and tested Fisher during a three-hour zoom videoconference and that, based on his personal knowledge of the facts and his experience as a neuropsychologist, no independent neuropsychological evaluation of Fisher was necessary. But, in this first affidavit, Dr. Feltoon did not present any facts establishing Fisher's inability to communicate with her attorneys following the IME. In his second affidavit, Dr. Feltoon stated that, during his three-hour zoom evaluation of Fisher, he had conducted "a battery of generally accepted clinical tests regularly used and relied on by psychologists in performing differential diagnoses and patient evaluation" and had diagnosed Fisher with "Post Traumatic Stress Disorder, Mild Neurocognitive Disorder, Moderate Depressive Disorder, Traumatic Brain Injury, Migraine Headaches, Chronic Headaches, and Third Nerve Palsy of the left eye." Dr. Feltoon stated that consistent with her brain injury and related memory loss, she has no "memory of what occurred before during or after the subject wreck" and that she is emotionally fragile. A claim of psychological fragility is insufficient to support recording of the IME unless Fisher would likely say things she did not intend and that might harm her case. *See Morrison v. Stephenson*, 244 F.R.D. 405, 407 (S.D. Ohio 2007). Aside from noting Fisher's failure to recall the accident, Dr. Feltoon

did not offer any evidence or testing results that reflected an impairment that could prevent her from communicating with her attorneys after the IME.

Fisher also presented to the trial court a declaration from Dr. DeFrance, who has never personally examined Fisher but discussed his review of other physicians' examinations and opined that Fisher exhibited post-traumatic stress disorder and that she likely lacked cognitive improvement. Dr. DeFrance noted memory deficits, but the only memory issue raised by treating physicians concerned her memory of the accident. Thus, this declaration failed to demonstrate a deficit or disability that could prevent Fisher from communicating with her attorneys about the examination.

Dr. Miranda-Grajales provided a declaration in which he noted that Fisher had been diagnosed with a traumatic brain injury and that this prevented her from recalling the accident, but he did not assert that Fisher would be unable to communicate with her attorneys about the IME. Dr. Miranda-Grajales included an excerpt of a report of his evaluation of Fisher reflecting average scores on all tests except for attention. These results do not reveal an impairment or disability that could prevent Fisher from communicating with counsel about the IME.

Additional proof presented by Fisher included a one-page excerpt from a daily treatment authorization report for speech and language therapy at the Patricia Neal Outpatient Center. This excerpt identified goals for treatment and summarized results of an undated assessment by an unidentified person concerning delays in

19

auditory memory, decreased visual memory, and decreased attention skills. This excerpt from a speech and language therapy treatment plan is not the type of evidence relied on by other courts in finding special circumstances that could prevent Fisher from communicating with her counsel about the IME. *Cf. Sequoyah*, 273 F.R.D. at 664 (exam recorded when testing showing low average IQ and limited reading and vocabulary skills, and deposition transcripts showing plaintiff's inability to recall everyday events or discussions with physicians); *Maldonado*, 2011 WL 841432, at *3 (exam recorded when expert reports showing memory and cognitive impairments, and proof that plaintiff was non-English speaker with third-grade education).

Fisher filed additional proof in a second supplemental response to the motion to compel, providing another declaration by Dr. DeFrance, a declaration by Lane Cook, M.D., and a report dated December 8, 2023, from an office visit by Dr. Valerie Rundle Gonzalez, a board-certified neurologist. The second declaration by Dr. DeFrance, as with the first, was not based on any evaluation by Dr. DeFrance and contained no proof of any deficit that would prevent Fisher from communicating with her counsel concerning the examination. Dr. Cook, Fisher's treating psychiatrist, asserted that Fisher suffered post-examination "triggering of psychological trauma and headaches," but he did not mention any memory or

20

language deficits that could prevent Fisher from communicating with her counsel about the independent examination.

Finally, the report of Dr. Gonzalez listed diagnostic codes for Fisher, including concussion, post-concussion syndrome, chronic post-traumatic headache, chronic migraine, frontal lobe and executive function deficit, attention and concentration deficit, dizziness and giddiness, third nerve palsy of the left eye, insomnia, fatigue, and demoralization and apathy. Although this report listed a variety of diagnoses, there was no connection established between these diagnoses and an inability to communicate with her attorney after the IME.

In response to the petition for writ of mandamus, Fisher filed a sworn record containing six items. As discussed previously, relators moved to strike Tabs 1–3 and 5 of this record. We granted the motion to strike Tabs 3 and 5, but we may consider the documents in Tabs 1–2, and 4 as those are physician reports and contain medical data. Fisher admits that these documents were presented to the trial court in connection with other motions, but we will consider them because they were in the trial court record when it made its ruling.

Tab 1 contains Dr. Feltoon's report. This report indicates that Fisher is a program manager for the University of Tennessee and takes prescription medication for anxiety and migraine headaches. Fisher had migraines before the accident, but her dosage of medication has increased since the accident. Dr. Feltoon administered

21

the Minnesota Multiphasic Personality Inventory-2 which revealed "a great deal of emotional and physical pain." Dr. Feltoon described Fisher as nervous, tense, anxious, depressed, distraught, angry, and resentful. Dr. Feltoon also administered the Beck Depression Inventory-2 to assess the severity of depression and diagnosed her with a severe level of depression. The Beck Anxiety Inventory revealed that Fisher is moderately anxious. The Incomplete Sentence Blank test was administered which allows the patient to express their real feeling as they complete the sentence and Fisher's responses showed she was negatively impacted physically and emotionally by the accident. Based on this testing, Dr. Feltoon diagnosed Fisher with post-traumatic stress disorder, post-concussive syndrome, major depressive disorder, and chronic pain disorder. Fisher reported concentration and memory problems impacting her work but not any deficits or disability preventing her from communicating, and in fact, this report showed Fisher's ability to communicate well with Dr. Feltoon about her current life and how it has changed since the accident. Tab 2 is Fisher's fifth amended disclosure of expert witnesses, but this merely summarizes the testimony Fisher's expert witnesses are expected to give. Tab 5 contains Dr. Feltoon's raw data, which does not offer any additional information that is not contained in his report.

Based on a review of the proof Fisher presented to the trial court, there is no proof that she has serious memory deficits that would interfere with her ability to

communicate with counsel about the IME. In fact, one of her own experts, Dr. Feltoon, disputed Fisher's allegation of memory-related communication difficulties by reporting that Fisher is able to communicate well about her current life and the impact the accident has had on her life. Thus, although there is some proof that Fisher's memory of the accident is impaired, there is no expert report or physician diagnosis of a cognitive impairment that could interfere with her ability to discuss the IME with her attorneys.

Fisher asserts that we must give deference to the trial court's ruling and may not substitute our judgment for the trial court's as it concerns factual matters, even if we would reach a different conclusion. *See Walker*, 827 S.W.2d at 837. To show an abuse of discretion in resolving factual matters, the relator must show that the trial court could reasonably have reached only one decision. *See id.* at 839–40. When a party fails to meet the burden of "showing special circumstances or a particularized need, unique to her situation, supported by specific facts, that provide good cause for allowing the examination to be [recorded]", the trial court's ruling is arbitrary and unreasonable, amounting to a clear and prejudicial error of law. *See Soc'y*, 622 S.W.3d at 18–19.

Fisher presented a number of declarations, affidavits, and report excerpts reflecting a variety of psychological issues and medical diagnoses, but none of these established that she had a memory or language deficit preventing her from

23

communicating with her attorneys. Indeed, some exhibits revealed her ability to speak well about her childhood, her current situation, and the changes in her life since the accident. Although the reports clearly showed that Fisher could not recall the accident, that does not show that she would be unable to discuss the IME with her attorneys.

The trial court ordered relators' expert, Dr. Boake to interview Fisher by zoom so that the trial court could determine if Fisher should be deposed and relators presented this report to the trial court before it ruled on the question of recording the IME. This report was also before the trial court and indicated that Fisher was alert, cooperative, with fluent speech and no word-finding difficulties. Dr. Boake noted that Fisher recalled a pre-accident activity the same day as the accident but did not recall the accident. Fisher told Dr. Boake that she drives independently, has a service dog for which she had to drive out of state to undergo training, and that she manages her affairs independently, receiving no treatment for any cognitive deficits. This supports Dr. Feltoon's assessment that Fisher is able to communicate about current activities and past occurrences other than the accident itself.

We conclude that relators have established an abuse of discretion by the trial court in ordering audio and video recording of the IME because Fisher failed to establish that she has any disability preventing her from communicating with her attorneys after the IME.

## 2. Location of Examination

The trial court ordered the IME to occur in Tennessee where Fisher resides. Relators assert that the trial court's requirement that the IME occur in Fisher's home state, rather that the forum where the lawsuit was filed, was unreasonable and unworkable.

Rule 204 provides that an order for a physical or mental examination must be in writing and "specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made." TEX. R. CIV. P. 204.1(d). Texas courts have held that a trial court retains discretion regarding conditions of the IME and to impose reasonable limitations on the location and scope of the examination. *See In re Offshore Marine Contractors, Inc.*, 496 S.W.3d 796, 803 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding) (holding that trial court retains discretion to impose reasonable limits on location and scope of independent examination).

Although Texas courts have held that trial courts retain jurisdiction to impose reasonable limits on the location of the independent examination, relators challenge the reasonableness of ordering the IME to occur in Tennessee. No Texas cases address the reasonableness of a trial court's order for an independent examination to occur out of state. As with Rule 204.1 and its requirement that trial courts specify location of the independent examination, Federal Rule 35 requires an order for an

IME to specify the time, place, manner, conditions, and scope of the examination. *See* Fed. R. Civ. P. 35(a)(2)(B). The federal courts have grappled with orders specifying a location for the IME not in the forum and "[t]he general rule is that a plaintiff who brings suit in a particular forum may not avoid appearing for an examination in that forum." *Ornelas*, 292 F.R.D. at 399–400. Explaining why this general rule exists, the Oregon District Court stated:

> The rule is a sensible one—usually the plaintiff is being examined in the forum chosen by the plaintiff. In such case, the plaintiff is expected to pay the costs of the litigation carried on in that forum. Furthermore, a doctor's presence at trial is made more likely if the doctor is chosen within the jurisdiction of the court.

*McCloskey v. United Parcel Serv. Gen. Servs. Co.*, 171 F.R.D. 268, 270 (D. Or. 1997). "Logic also dictates such a result, because the facilities and equipment an examiner needs are likely at his place of practice." *Ornelas*, 292 F.R.D. at 400. This rule also ensures that the defendant's "examining specialist is available as an expert witness at trial." *Id.*

In determining whether the plaintiff has established undue burden or hardship, federal courts focus on physical or medical hardships. *See Mansel v. Celebrity Coaches of Am., Inc.*, No. 2:13-cv-01497-JAD-NJK, 2013 WL 6844720, at *2 (D. Nev. Dec. 20, 2013) (observing that general rule plaintiff must travel to forum where action is brought requires plaintiff to show inability to do so due to medical condition constituting undue burden or hardship). For example, a federal trial court found

26

proof of undue burden or hardship supporting an order for the IME to occur in the plaintiff's hometown based on proof by sworn statement of a physician that plaintiff suffers regular seizures and mother's statement that travel by car would be difficult given plaintiff's multiple seizures often involving locking of limbs, body shaking, and falling over. *See Vandergriff v. Red Robin Int'l, Inc.*, No. 1:14-cv.177-SKL, 2016 WL 1735857, at *2–3 (E.D. Tenn. May 2, 2016). Even if a plaintiff establishes the existence of a medical condition, there must be proof that, due to this medical condition, travel will harm the plaintiff. *See Mansel*, 2013 WL 6844720, at *2–3 (D. Nev. Dec. 20, 2013) (holding plaintiff had not established undue hardship because doctor note indicating plaintiff had history of severe COPD and several hospitalizations did not explain harm that might result to plaintiff from travel to Las Vegas for IME); *Prado v. Cty. of Siskiyou*, No. CIV S-08-1835-GEB-CMK, 2009 WL 1657537, at *1, 3 (E.D. Cal. June 12, 2009) (determining plaintiff failed to meet burden of proving inability to travel for IME because doctor's declaration that plaintiff was undergoing cancer treatment and should not travel did not explain inability to travel).

The Texas Supreme Court has held that federal courts' construction of Federal Rule of Civil Procedure 35 is helpful because that rule is analogous to Texas Rule 204. *See H.E.B. Grocery Co.*, 492 S.W.3d at 304 (stating that it had previously found federal courts' construction of Federal Rule 35 helpful in analyzing

predecessor to Rule 204.1). Accordingly, we conclude that the federal court's analysis of the reasonableness of a trial court's order of location for an IME is helpful in analyzing whether a location ordered under Rule 204.1 is reasonable. To show undue burden or hardship, Fisher had to show either that she is unable to travel or that travel would likely cause her harm. *See Mansel*, 2013 WL 6844720, at *2. General assertions of an inability to travel are not sufficient to meet the burden of showing undue burden or hardship, but instead, the plaintiff must offer specific evidence demonstrating her inability to travel. *Tindell v. Engen*, No. CV21-4590-PLA, 2022 WL 20689542 at *4 (D. Cal. Nov. 3, 2022).

Fisher asked the trial court to order the IME to be conducted in Knoxville, Tennessee, where she resides, rather than in Harris County where her suit was filed because she claims she is emotionally fragile and stressed since the accident. In support of this contention, Fisher provided the following: (1) a declaration by Dr. DeFrance, who has not evaluated Fisher himself but relied on findings of Dr. Klitzke and Dr. Feltoon to conclude that "another evaluation would be unduly stressful and without additional value"; (2) an affidavit of Dr. Feltoon, who stated that an additional evaluation would likely be traumatic; and (3) a statement by Dr. DeFrance in his declaration that, due to Fisher's delicate condition, the evaluation should be conducted in her hometown where she would be more comfortable. None of this proof established that travel to Houston would cause anything more than discomfort.

28

Moreover, Fisher has traveled to Texas for examinations by physicians who have provided reports and declarations on which she relies in this case. As part of her proof in the trial court, Fisher provided a declaration from Dr. Miranda-Grajales and a report by Dr. Gonzalez. Both physicians are located in Austin, Texas. Dr. Miranda-Grajales, whose office is in Austin stated that she had examined Fisher and had an MRI performed. Dr. Gonzalez, whose office is in West Lake Hills, a suburb of Austin, stated in her report that she also evaluated Fisher. Neither document stated that the examinations occurred in other locations or by zoom. Fisher does not explain how she is able to travel to Texas for evaluations by her physicians and yet unable to travel to Texas for an evaluation by Dr. Boake.

And an examination, whether in Tennessee or in Texas would be equally stressful. In *Tindell v. Engen*, a California federal district court considered whether an IME should occur in Bakersfield, California where plaintiff lived, or in Los Angeles where the physician examiner was located and where trial would be held. 2022 WL 20689542 at *2. Plaintiff presented a declaration from a neurorehabilitation evaluation stating that appellant "remained in a fragile state" and that she should not be subjected to a grueling neuropsychological examination, but if the court ordered the examination, it should be in Bakersfield as the travel would be "unduly burdensome to his current treatment/recovery status" and would be a "significant disruption" to his daily routine. *Id.* at *3. The court stated that it may

29

consider the plaintiff's medical condition, but that "[d]espite plaintiff's 'fragile state,' he is still willing to undergo the 'lengthy and rigorous defense neuropsychological examination' in Bakersfield, where the examination would likely be no less lengthy or rigorous." *Id.* at \*4. In conclusion, the court found that plaintiff had not met his burden of establishing that he faces an undue hardship traveling to Los Angeles, he chose the forum for his lawsuit, and any disruption of his routine or the inconvenience or burden of driving to the mental examination was minimal. *See id.* at \*5.

Fisher's proof does not establish that she would suffer undue hardship traveling to Houston since the testing would be the same in both locations. Moreover, Fisher has not established an inability to travel or that she would suffer harm or undue hardship traveling to Houston. The trial court had before it Dr. Boake's affidavit and report from his zoom interview with Fisher in which Dr. Boake related Fisher's statements that she had driven herself to Florida for the training of her service dog and denied being harmed by this travel. And Fisher herself presented proof that she had traveled to Texas for testing by her physicians. Because Fisher presented no proof that travel would cause her harm or that an IME in Harris County would pose an undue hardship, the trial court abused its discretion in ordering the IME to occur in Knoxville, Tennessee.

**Deposition of Fisher before the IME**

In their final issue, relators complain that the trial court denied relators' request to depose Fisher. Relators stated that they had wanted to depose Fisher before she underwent an IME. Relators assert that they initially sought Fisher's deposition in May 2023 and that Fisher had not agreed to appear.

If a party properly files a motion, the trial court's act of considering and ruling on that motion is ministerial. *See In re Huang*, 491 S.W.3d 383, 385 (Tex. App.— Houston [1st Dist.] 2016, orig. proceeding). To show that the trial court's refusal to act is an abuse of discretion, the relator must show that "the trial court had a legal duty to perform a ministerial act, relator made a demand for performance, and the court refused to perform." *Id.* Thus, we must determine if relators requested a ruling and the trial court refused to rule.

Relators, claiming they were unable to obtain a date for deposing Fisher, filed a motion to compel an independent medical exam and deposition. On August 29, 2023, Fisher filed a motion for protection, seeking protection from deposition and "confrontation." Fisher asserted in her motion for protection that "such confrontation and questioning would be harmful for [her] and [Dr. Feltoon] advises that [Fisher] should not be subjected to the rigors of an adversarial deposition."

Relators responded and sought a continuance of the hearing on Fisher's motion for protection to allow review of Fisher's medical data and asked the trial court to permit relators' experts to gain access to Fisher's expert raw medical data

and documentation. Relators argued that Fisher's motion for protection was essentially "trial by ambush" because relators had no access to the evidence required to respond and thus, a hearing was premature. Fisher responded, again asserting that Dr. Feltoon had concluded Fisher would be harmed by an adversarial deposition and arguing that relators should have requested Fisher's medical data long before the motion for protection was filed and did not submit evidence from any doctor or expert that the requested test data was necessary to reach any conclusion concerning Fisher's condition for deposition.

The trial court held a hearing on the motion for protection and ordered Fisher to provide all raw data and medical documentation from Dr. Feltoon to relators within 21 days of the order. No order concerning Fisher's deposition was signed. On October 31, 2023, relators filed a letter with the trial court, attaching a letter from Dr. Boake, relators' expert, in which Dr. Boake stated that he wanted to interview Fisher in person or by teleconference, to assess Fisher's ability to participate in and tolerate an interview.

On January 24, 2024, Fisher filed a supplement in response to relator's motion to compel and relators' response to Fisher's motion for protection. Attached to this supplement was Dr. Boake's January 23, 2024 affidavit, stating that he interviewed Fisher on December 21, 2023 by teleconference, and though he asked her at intervals if she was experiencing distress, she denied any. Dr. Boake stated that Fisher

comprehended his questions accurately, responded clearly, did not show any emotional distress, and denied the need to take breaks though they were offered. Boake stated that Fisher reported events leading up to and after the accident, reported her pre-accident and current work responsibilities, as well as previous and current living situation and activities she does independently and with limitations and the strategies she uses.

Relators noticed a hearing on their motion to compel on March 6, 2024, but a hearing was not held until May 16, 2024. During that hearing, relators advised that their expert had reviewed Dr. Feltoon's data and determined that Fisher was "working at a very high-functioning job for the University of Tennessee," had received promotions since the accident, was driving a car, and living alone.

The trial court stated during the May 2024 hearing that it would not rule on the motion to compel Fisher's deposition until after Fisher's IME. The trial court stated that it was allowing the IME because the "whole point of doing — and this is the reason why I was inclined to do — to allow you the opportunity to do a defense medical exam was for the purpose to see whether or not she is fit to give the deposition." This indicates that the trial court did not intend to rule on the request to depose Fisher until after Dr. Boake conducted his IME and relators did not object to this. Hearings were held on June 5, 2024 and July 2, 2024, but the request for Fisher's deposition was not raised during these hearings.

33

The trial court's written ruling on the IME did not issue until January 8, 2025. Because that date was approximately two weeks before trial was scheduled to begin, relators were faced with the likelihood that no deposition could be scheduled. Nonetheless, relators did not object and appeared to acquiesce in the trial court's decision to hold off on ruling on the motion to compel Fisher's deposition until after the IME was conducted. Relators did not contest this decision and have not shown a refusal by the trial court to consider and rule on the motion to compel Fisher's deposition. Accordingly, relators have not established an abuse of discretion concerning their request to take Fisher's deposition.

**Adequate Remedy by Appeal**

"In the discovery context, an appellate remedy is not adequate if: '(1) the appellate court would not be able to cure the trial court's error on appeal; (2) the party's ability to present a viable claim or defense is vitiated or severely compromised; or (3) missing discovery cannot be made a part of the appellate record.'" *Offshore Marine Contractors*, 496 S.W.3d at 804. A remedy by appeal is inadequate when a relator does not have the opportunity for its expert to "develop and present his opinion, ensuring a fair trial." *H.E.B. Grocery Co.*, 492 S.W.3d at 304–05. Finally, the adequacy of the appellate remedy is determined by balancing the benefits and detriments of mandamus review. *See Prudential*, 148 S.W.3d at 135–36. "Mandamus review of incidental, interlocutory rulings by the trial courts

unduly interferes with trial court proceedings, distracts appellate court attention to issues that are unimportant both to the ultimate disposition of the case at hand and to the uniform development of the law, and adds unproductively to the expense and delay of civil litigation." *Id.* at 136. But where significant rulings in exceptional cases are involved, mandamus review "may be essential to preserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *Id.*

This case arises from a suit for damages in a vehicle collision case, which is not an exceptional case, but the issues concerning the recording of IMEs arise often and raise questions for which little case law offers guidance. Relators contend that the viability of their defense is detrimentally affected by the recording of the examination, which will interfere with their expert's testing, and the ordering of the examination in Tennessee, where their expert is not licensed, which essentially deprives them of the expert of their choice. These concerns weigh in favor of mandamus review and a conclusion that the remedy by appeal is inadequate.

**Conclusion**

We conditionally grant the petition for writ of mandamus as it concerns the portions of the order compelling the IME to be recorded and to be conducted in Tennessee. We deny the portion of the petition complaining of the trial court's refusal to grant the motion to compel Fisher's deposition. We are confident that the trial court will vacate the portions of the January 8, 2025 order requiring the recording of the IME and the location of the IME in Knoxville, Tennessee rather than in Harris County. The writ will issue only if the trial court refuses to do so. We lift the stay imposed by our January 22, 2025 order.

**PER CURIAM**

Panel consists of Justices Guerra, Gunn, and Dokupil.

36